Jim RABOIN and Kim Raboin, Petitioners and Appellants,

v.

NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Respondent and Appellee.

Civil No. 950391.

Supreme Court of North Dakota.

June 27, 1996.

Monty G. Mertz, Mertz Law Office, Fargo, for petitioners and appellants.

Candace Ann Prigge, Assistant Attorney General, Attorney General's Office, Bismarck, for respondent and appellee. Appearance by Jean R. Mullen, Assistant Attorney General.

SANDSTROM, Justice.

Jim and Kim Raboin appealed from a judgment of the district court affirming the North Dakota Department of Human Services' (the Department) finding of probable cause to indicate child abuse by the Raboins in disciplining their children. We conclude there is a statutory right of appeal to the courts from the Department's finding of probable cause to believe child abuse or neglect is indicated. We also conclude the Department's finding of probable cause is not supported by a preponderance of the evidence and is not in accordance with the law, and we reverse and remand to vacate the probable cause finding.

I

The Raboins were married in 1983 and live in Fargo with their six children, all of whom were under 11 years of age at the time of these proceedings. It is undisputed the Raboins' children are healthy, happy, and well-adjusted. As a last resort for disciplining the children, the Raboins impose corporal punishment by spanking the children on the buttocks with a plastic spoon or leather belt a

predetermined number of "whacks," according to the seriousness of the misconduct.

In October 1994, Cass County Social Services received a report from a person expressing concern the Raboins were striking their children with objects as a form of discipline. The Department, as required under N.D.C.C. § 50–25.1–05, investigated the report of suspected child abuse through the Cass County Social Services office. On November 21, 1994, the social worker who conducted the investigation filed a written report, as provided by N.D.C.C. §§ 50–25.1–05.1 and 50–25.1–05.2, concluding there was probable cause to believe child abuse had occurred. The report shows services and assistance were offered to the family but declined by the Raboins. The case was referred by Cass County Social Services to the state's attorney, who concluded there was no basis to bring charges or to begin legal proceedings.

The Raboins filed a written request for a review by the Department of the investigation under N.D.C.C. § 50–25.1–05.4 and N.D. Admin. Code § 75–03–18–02. After a formal administrative hearing, the hearing officer filed a written recommendation the determination of probable cause of abuse should be reversed and the reversal noted in the Department's child abuse information index under NDAC § 75–03–18–13. The director of the Department, after reviewing the record, rejected the hearing officer's recommendation and upheld the probable cause determination. The Raboins appealed to the district court, which upheld the Department's determination of probable cause. The Raboins then appealed to this Court.

II

 The right of appeal in this state is statutory and is a jurisdictional matter which we will consider sua sponte. *Midwest Federal Savings Bank v. Symington*, 393 N.W.2d 753, 754 (N.D.1986); *see also In Interest of C.L.L.*, 507 N.W.2d 900 (N.D.1993). Before we consider the merits of an appeal we must have jurisdiction, and if there is no right to appeal we must dismiss. *Community Homes of Bismarck, Inc. v. Clooten*, 508 N.W.2d 364, 365 (N.D.1993).

A

 N.D.C.C. § 50–25.1–05.4 authorizes a review procedure for child abuse investigations:

"The department of human services shall adopt rules to resolve complaints and conduct appeal hearings requested by the subject of a report of suspected child abuse or neglect who is aggrieved by the conduct or result of the investigation of a probable cause finding of the suspected child abuse or neglect."

The language of this statute directs the Department to adopt rules for Department administrative review of probable cause investigations and determinations. The statute, however, contains no language authorizing an appeal to the courts, and we therefore conclude none was intended. Our reading of this statute is supported by the legislative history of its adoption.

The original bill (Senate Bill 2059) was drafted in 1989, following an interim study by the Law Enforcement Committee, to establish "policies and procedures by the department of human services to resolve complaints and conduct reviews concerning investigations of reports of child abuse or neglect." The original bill provided extensive procedures for informal and formal agency review, and included a provision stating, "Chapter 28–32 applies to reviews conducted by the department pursuant to this section." The 1989 Report of the North Dakota Legislative Council, at 164–165, addressed this language:

"The committee heard considerable testimony concerning the need for implementation of an administrative review procedure to provide persons with a forum to present grievances concerning the investigative process or determinations of probable cause relating to reports of child abuse or neglect.... The bill draft provided that the review procedure conducted by the Department of Human Services is subject to the Administrative Agencies Practice Act, which provides an adjudicatory procedure to be followed by administrative agencies and for appeals from administra-

tive agency decisions to the judicial system."

In testimony before the Human Services and Veteran's Affairs Committee during the 1989 legislative session, Gladys Cairns, the Department's Administrator of Child Protective Services, recommended the bill draft be amended to delete the application of Chapter 28–32 in the review process, thereby eliminating the statutory basis for appeals to the judicial system from these administrative agency determinations. One committee member expressed concern the original bill draft, with its multiple reviews, created a great deal of expense and waste of resources when there was no practical legal effect to the determination of probable cause. Senate Bill 2059 was extensively amended in committee, and the reference to Chapter 28–32 was omitted from the final bill draft passed by the legislature. S.L.1989 Ch. 587. This history of the adoption of N.D.C.C. § 50–25.1–05.4 supports our conclusion the legislature's intent was to provide only an internal administrative review of probable cause determinations under this statute. We must also review, however, if the decision is appealable under the Administrative Agencies Practice Act.

### B

The Administrative Agencies Practice Act, N.D.C.C. § 28–32–15, authorizes appeals from "final orders" of administrative agencies. *Bashus v. N.D. Dep't of Human Services*, 519 N.W.2d 296, 297 (N.D.1994). N.D.C.C. § 28–32–01(7), defines "order" as "any agency action of particular applicability that determines the legal rights, duties, privileges, immunities, or other legal interests of one or more specific persons. . . ." To determine whether this statute gives the Raboins a right to appeal, we must decide whether the Department's determination of probable cause the Raboins abused their children is an order.

Upon completing an investigation of reported child abuse, the Department must make a determination whether there is probable cause to believe child abuse is indicated. N.D.C.C. § 50–25.1–05.1. If the Department finds probable cause to believe there is child abuse, it must promptly make a written report to the juvenile court and file it in a child abuse information index. N.D.C.C. § 50–25.1–05.2. The legislature expressly made these reports confidential and, consequently, exempt from public access under the open records law. N.D.C.C. § 50–25.1–11; *see Adams County Record v. Greater North Dakota Ass'n*, 529 N.W.2d 830, 833 (N.D.1995). As originally enacted, a finding of probable cause under N.D.C.C. § 50–25.1–05.1 did not affect legal rights or privileges of the persons against whom the finding was made. The finding could trigger action by others, such as the state's attorney or juvenile court, which might result in future proceedings affecting legal interests of the parties involved. The mere filing of the probable cause report, however, did not carry a legal effect or consequence. We conclude subsequent statutory enactments have elevated the consequences of a probable cause finding so that a finding of probable cause of child abuse now affects legal rights or interests of the person against whom it is directed and, therefore, constitutes an appealable final order under N.D.C.C. Ch. 28–32.

### 1

In 1991, the legislature created a process for persons providing child care services to voluntarily be listed in a "carecheck registry" showing they do not have a criminal record or past history of child abuse. The law precludes a person from being listed in the registry if the Department has filed against that person a determination of probable cause of child abuse:

"The applicant for placement in the carecheck registry, after satisfying requirements imposed by the department, must be placed in the carecheck registry if no relevant criminal history record information is found and no report of a determination of probable cause for child abuse or neglect filed pursuant to section 50–25.1–05.2 is found which would disqualify the person. . . ."

N.D.C.C. § 50–11.1–06.2. There is no appeal process or other recourse written into this legislation for a person denied placement in the carecheck registry. The statute further provides:

"The division . . . shall provide, through a toll-free telephone line maintained by the department, a means to allow interested parents or guardians, employment agencies, or child care referral groups to determine if a person has met the requirements for placement in the carecheck registry. The division shall undertake a public awareness effort to explain the existence and purpose of the carecheck toll-free telephone line."

Consequently, the probable cause determination precludes persons from being listed in the registry and potentially jeopardizes their ability to secure and retain clientele for daycare services or to secure employment in child care. Under this legislation, the probable cause determination has serious consequences and affects legal rights and interests.

### 2

We conclude N.D.C.C. § 50–11.1–06.2 creates consequences flowing from the Department's finding of probable cause of child abuse under N.D.C.C. 50–25.1 which affect the legal rights, duties, privileges, immunities, or other legal interests of the person against whom the finding is directed. We conclude, therefore, the Department's finding there is probable cause of child abuse is an appealable final order under N.D.C.C. Ch. 28–32. The Raboins can appeal even though the adverse consequences may only occur if they seek to provide child care services or to be employed in such a facility. The effects may be immediate for those already providing child care services. As to listing in the carecheck registry, the determination of probable cause is not subject to review in another proceeding.

The Raboins filed a timely appeal of the Department's decision to the district court under N.D.C.C. § 28–32–15. The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. § 28–32–19. The Raboins filed a timely appeal under N.D.R.App.P 4(a). This Court has jurisdiction under N.D. Const. Art. VI, § 6, and N.D.C.C. § 28–32–21.

### III

■ The Raboins assert the Department's probable cause determination is not supported by the evidence and is not in accordance with the relevant statutory law. When an administrative agency decision is appealed from the district court to this Court, we review the decision of the agency, not the district court. *Matter of B.K.U. Enterprises, Inc.,* 513 N.W.2d 382, 384 (N.D. 1994). Under N.D.C.C. § 28–32–19, we affirm the agency decision unless one of the six enumerated reasons exists for overturning it. We determine whether the agency's findings of fact are supported by a preponderance of the evidence, its conclusions of law are supported by its findings of fact, and its decision is in accordance with the law. *Southeast Human Service Center v. Eiseman,* 525 N.W.2d 664, 669 (N.D.1994).

Under the Department's regulations for reviewing a determination of probable cause of abuse, the Department affirms the investigating party's determination of probable cause unless it "acted arbitrarily, capriciously, or unreasonably" in making the decision. N.D.A.C. § 75–03–18–04(2). Our review, however, is governed by N.D.C.C. § 28–32–19(5), where we determine whether the agency's findings of fact are supported by a preponderance of the evidence. We do not substitute our judgment for that of the agency, but only determine whether a reasoning mind could reasonably have determined the factual conclusions were supported by the weight of the evidence. *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214, 220 (N.D.1979); *Zimmerman v. Dep't of Transp.,* 543 N.W.2d 479, 481 (N.D.1996). We reject the Department's suggestion that we decide only if the Department could reasonably have found its employee did not act "arbitrarily, capriciously, or unreasonably." We decide if the Department could reasonably have found probable cause under the law. *See Ornelas v. United States,* —— U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (holding the ultimate question of probable cause should be reviewed *de novo* ).

■ The term "abused child" is defined under N.D.C.C. § 50–25.1–02(2):

" 'Abused child' means an individual under the age of eighteen years who is suffering from *serious physical harm or traumatic abuse* caused by other than accidental means by a person responsible for the child's health or welfare, or who is suffering from or was subjected to any act involving *that individual in violation of sections 12.1–20–01 through 12.1–20–08.*" [1] (Emphasis added.)

The term "harm" is defined under N.D.C.C. § 50–25.1–02(4), which provides in relevant part:

" 'Harm' means negative changes in a child's health which occur when a person responsible for the child's health and welfare:

"a. Inflicts, or allows to be inflicted, upon the child, physical or mental injury, including injuries sustained as a result of excessive corporal punishment. . . ."

Having reviewed the entire record in this case, we conclude there is no evidence from which a reasonable person could conclude the Raboins have committed child abuse as defined by these statutes. There is simply no evidence the Raboin children have suffered serious physical harm or traumatic abuse from the spankings administered by their parents in disciplining them.

## A

An assessment worker with Cass County Social Services, investigated the alleged abuse by the Raboins and filed a written report. The assessment worker relates Brandon, age 10 and the oldest child, told her he was swatted on the butt twenty times "five years ago" because he swore a lot and as a result he "received a black and blue mark for a couple minutes." Brandon also told her none of his brothers or sisters have ever had bruises or marks as a result of being disciplined by their parents. The second oldest child, Andrew, age 9, told Brown he received seventeen whacks on the butt for kicking his little sister. He said he had bruises from this but was unable to describe for Brown what the bruises looked like. Brown's report does not mention any other incidents which even suggest any of these children have ever suffered serious physical harm or emotional trauma from the spankings.

At the administrative hearing, Jim and Kim Raboin both testified they have never administered corporal punishment out of anger or in rage against their children. Kim Raboin testified both parents give their children "a lot of love" so the children know they are "accepted" and give them "structure" and "affection" with lots of "verbal praise." They set clear rules and boundaries for the children and use corporal punishment only as a last resort when the children refuse to heed the parents' numerous verbal warnings or occasional pinch on the back of the neck to let them know the boundaries have been crossed. Corporal punishment is administered only on a child's buttocks with the use of a wooden or plastic spoon or belt. Both parents testified they have never observed any bruises, welts, cuts, abrasions, or any other lasting evidence of the spankings other than some temporary reddening of the skin. Besides the very vague and nondescript statements by Brandon and Andrew to Brown about some slight bruising, there is no evidence to contradict Jim and Kim Raboins' testimony.

The regional representative of Child Protection Services for the Southeast Human Service Center, testified he had no reason to doubt the Raboin children are healthy and well-adjusted. He said with the number of whacks administered on occasion to some of the children "there may have been bruises on [the] children at some point," but he did not testify he had personal knowledge any of the Raboin children were bruised by the spankings.

Although the Department may not have been comfortable with the Raboins' disciplinary practices, we conclude a reasonable person could not find on this record probable cause the Raboins abused their children. There is no evidence from which a reasonable person could conclude any of these children ever suffered serious physical harm or trau-

---

1. There are no allegations in this case the Raboins sexually abused their children or committed any other act against their children which would violate these criminal code sections.

matic abuse as a result of the parents' spankings. Even if we infer from Brandon and Andrew's statements to the investigator each of them had experienced slight bruising on the buttocks from a past spanking, these spankings fall far short of the statutory definition of child abuse. A reasonable person could not conclude a slight bruise on the buttocks is a serious "negative change[ ] in a child's health." N.D.C.C. § 50–25.1–02(4).[2]

### B

The Raboins assert their methods of discipline are based on the practice of their religious beliefs. Kim Raboin testified she and Jim believe the teachings of the Bible require parents to administer corporal punishment, when necessary, to "train our children in the way they should go so that when they are old, they won't depart." The Raboins claim the Department is interfering with their constitutional right to freely practice their religious beliefs and that the Department's probable cause determination also violates N.D.C.C. § 50–25.1–05.1(2), which, at the time of these proceedings, provided in relevant part:

> "Probable cause to believe that child abuse or neglect is indicated may not be determined where the suspected child abuse or neglect arises solely out of conduct involving the legitimate practice of religious beliefs by a parent or guardian...."[3]

*See also* 42 U.S.C. § 2000bb–1 (Free exercise of religion protected).

Our determination the Raboins' conduct does not support a finding of probable cause to indicate child abuse under N.D.C.C. § 50–25.1–02(2) and (4) is dispositive, and we therefore need not address or resolve this issue. *See Minnkota Power Coop., Inc. v. Lake Shure Properties,* 289 N.W.2d 230, 233 (N.D.1980).

### IV

We conclude the Department's finding of probable cause of abuse is not supported by a preponderance of the evidence and this application of the statute by the Department is not in accord with the law. The judgment of the district court affirming the decision of the Department is therefore reversed, and the case is remanded with directions the district court order the Department to vacate the probable cause finding against the Raboins.

VANDE WALLE, C.J., and NEUMANN and MESCHKE, JJ., concur.

The Honorable Mary Muehlen Maring was not a member of this Court when this case was heard and did not participate in this decision.

NEUMANN, Justice, concurring specially.

I have joined the majority's opinion, but write separately to remind myself that what is legally sufficient often is, and must be, less than what is socially desirable.

I suspect corporal punishment, regularly and consistently applied, can only diminish a child's sense of self-worth, and thereby unnecessarily limit the resources that child can bring to life's battles. Because all of us as parents and as citizens want to equip our children in the best ways possible to meet their future, a future that is ours as well, I believe the regular use of corporal punishment is a practice to be avoided.

But, if corporal punishment is a practice that ideally should be avoided, such perfection in parenting is not a standard to which we fallible, struggling, impatient humans can or should be held as a matter of law. Accordingly, our legislature has defined "child

---

**2.** The use of reasonable force by a parent to punish a child is expressly authorized under N.D.C.C. § 12.1–05–05(1): "The use of force upon another person is justified under any of the following circumstances: ... a parent ... may use reasonable force upon the minor for the purpose of safeguarding or promoting his welfare, including prevention and punishment of his misconduct, and the maintenance of proper discipline.... The force used must not create a substantial risk of death, serious bodily injury, disfigurement, or gross degradation."

**3.** This subsection was amended effective January 1, 1996, and now provides:

> "A decision that services are required may not be made where the suspected child abuse or neglect arises solely out of conduct involving the legitimate practice of religious beliefs by a parent or guardian...."

abuse" and "harm" to forbid only *excessive* corporal punishment that results in injury. It is that legislative definition which this court is obligated to apply, and which the majority has properly applied in this case. We should understand, however, that while avoiding physical or mental injury to our children is the most that is demanded of us by the law, it is the least we owe our children. Fortunately for our children and for ourselves, most parents—including, I think, the petitioners in this case—strive to be better than the minimum the law demands of us.

NEUMANN and MESCHKE, JJ., concur.