2002 ND 113

**NODAK MUTUAL INSURANCE COMPANY and Phillip Puls, Plaintiffs and Appellees,**

v.

**Scott STEGMAN, Jeana Stegman, personal representatives of the Estate of Dennis Stegman, Jeana Stegman, Shane Stegman, Cory Stegman, Deborah Dearinger, as parent and natural guardian of Shane Stegman and Cory Stegman, Albert Stegman, Jean Stegman, Sharon Gratton, Defendants,**

**and**

**Altru Health System, Defendant and Appellee,**

**Deborah Dearinger, as parent and natural guardian of Shane Stegman and Cory Stegman, Defendant and Appellant.**

**No. 20010225.**

Supreme Court of North Dakota.

July 11, 2002.

Duane H. Ilvedson and Jacqueline S. Anderson, Nilles, Hansen & Davies, Ltd., Fargo, for plaintiffs and appellees. Submitted on brief.

Gordon W. Myerchin, Camrud, Maddock, Olson & Larson, Ltd., Grand Forks, for defendant and appellee.

H. Patrick Weir, Jr., Lee Hagen Law Office, Ltd., Fargo, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Shane Stegman and Cory Stegman, through their parent and natural guardian Deborah Dearinger, appeal from a judgment disbursing the proceeds of an automobile liability insurance policy. We affirm, concluding we have jurisdiction over the appeal and the trial court did not err in concluding Altru Health System had a valid hospital lien for the value of medical services provided to Dennis Stegman.

I

[¶ 2] On September 27, 1998, Dennis Stegman was seriously injured when the vehicle he was driving collided with one driven by Phillip Puls. Dennis Stegman was transported to Pembina County Memorial Hospital ("Pembina") and then to Altru Health System ("Altru") in Grand Forks. On October 6, 1998, during Dennis

Stegman's hospitalization, Altru filed a notice of hospital lien for the medical services provided to Dennis Stegman. Dennis Stegman never regained consciousness and died on October 11, 1998.

[¶ 3] On May 17, 1999, Puls and his insurer, Nodak Mutual Insurance Company ("Nodak"), filed an interpleader action requesting that the district court determine who was entitled to the proceeds of Puls's $100,000 automobile liability policy. Altru claimed its lien was valid and sought payment for Dennis Stegman's medical services from the insurance proceeds. Dennis Stegman's four children, Scott, Jeana, Shane, and Cory Stegman, disputed the validity and priority of the hospital lien and argued they should collect the full $100,000 for their father's wrongful death.

[¶ 4] The trial court concluded Pembina and Altru had valid hospital liens, which took priority over the wrongful death claims of Dennis Stegman's children. The court ordered Pembina and Altru were entitled to recover for the medical services provided to Dennis Stegman, and the Stegman children were to split the remainder of the $100,000.[1] After the Stegman children stipulated how the remainder would be split among them, judgment was entered ordering Puls and Nodak to pay Altru $18,103.74[2] and Pembina $1,687.30, with the Stegman children dividing the remainder.

[¶ 5] After judgment was entered, Nodak tendered checks to each of the claimants. The claimants accepted the payments, and the attorneys for each of the claimants signed acknowledgments that the judgment had been paid. The acknowledgments of payment of the judgment were filed on August 27, 2001, and

Shane and Cory Stegman's notice of appeal was filed on September 17, 2001.

## II

[¶ 6] Although not raised by the parties, we must first consider whether we have jurisdiction of the appeal. The right of appeal is a jurisdictional matter that we will consider sua sponte. *E.g., Treiber v. Citizens State Bank*, 1999 ND 130, ¶ 4, 598 N.W.2d 96; *Raboin v. North Dakota Dep't of Human Servs.*, 552 N.W.2d 329, 331 (N.D.1996). Before we consider the merits of an appeal, we must have jurisdiction, and we will dismiss an attempted appeal that fails for lack of jurisdiction. *Raboin*, at 331; *State v. Schindele*, 540 N.W.2d 139, 141 (N.D.1995).

[¶ 7] A judgment that has been paid and satisfied of record ceases to have any existence. *Lyon v. Ford Motor Co.*, 2000 ND 12, ¶ 10, 604 N.W.2d 453. A satisfaction of judgment on the record extinguishes the claim, and the controversy is deemed ended, leaving an appellate court with nothing to review. *DeCoteau v. Nodak Mut. Ins. Co.*, 2001 ND 182, ¶ 10, 636 N.W.2d 432; *Lyon*, at ¶ 10. An appellate court is without jurisdiction if there is no actual and justiciable controversy. *Gregory v. North Dakota Workers Comp. Bureau*, 1998 ND 94, ¶ 22, 578 N.W.2d 101. Thus, an attempted appeal from a judgment that has been satisfied of record fails for lack of jurisdiction.

[¶ 8] Satisfaction of judgment is governed by N.D.C.C. § 28-20-24:

> Satisfaction of judgment. Any judgment rendered or docketed in any district court of this state may be canceled and discharged by the clerk thereof,

---

1. Pembina's lien is not in issue on appeal.

2. The full value of the medical services rendered by Altru to Dennis Stegman was $44,603.74. Altru received $26,500.00 in payments from the no-fault insurance carrier, leaving a balance of $18,103.74.

upon the filing with him of an acknowledgment of the satisfaction thereof signed by the party in whose favor the judgment was obtained, or by his attorney of record, his executor or administrator, or his assignee, and duly acknowledged in the manner required to admit a deed of real property to record.

[¶ 9] The last phrase of the statute indicates an acknowledgment of satisfaction of judgment must be signed by the party or by his attorney, executor, administrator, or assignee, and must be duly acknowledged in the manner required to record a deed. Under our record title statutes, a deed generally must be acknowledged before a notary public or other public official, or by proof by a subscribing witness. See N.D.C.C. § 47–19–03 (instruments, other than in certain limited circumstances, must be acknowledged or proved by a subscribing witness before they can be recorded); N.D.C.C. § 47–19–13 (acknowledgment of an instrument may be made before a judge, the clerk of the supreme court, or a notary public); N.D.C.C. § 47–19–14 (acknowledgment may be made before certain public officials); N.D.C.C. § 47–19–14.1 (authorizing certain officials to perform "notarial acts," including acknowledgments of instruments). Thus, an acknowledgment of satisfaction of judgment must be notarized or otherwise witnessed and authenticated by a public official.

[¶ 10] The attorneys for each of the claimants in this case signed an "Acknowledgment" indicating receipt from Nodak and Puls of the respective amount due the claimant under the judgment. These "Acknowledgments" were not, however, notarized or otherwise witnessed, acknowledged, or authenticated. According-

ly, they do not meet the requirements of N.D.C.C. § 28–20–24, and the judgment has not been formally satisfied of record. The rule of *Lyon* therefore does not apply, and the appeal is not jurisdictionally barred.[3]

[¶ 11] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

### III

[¶ 12] Section 35–18–01, N.D.C.C., creates a lien in favor of any hospital that provides services to any person injured in an accident:

> Any charitable association, corporation, or other institution maintaining a hospital in this state is entitled to a lien for the reasonable value of hospitalization services rendered to a person injured in any accident. The lien attaches to all claims for relief, claims, demands, and judgments recovered on account of the injuries against persons or corporations liable to the injured person in tort for damages occasioned by negligence causing the injuries, and attaches to the proceeds of the settlement of such claims or demands, and to insurance of the tort-feasor payable by reason of the liability occasioned by such injury, and to any insurance or indemnity payable to the injured person by any insurer.

Under this statute, a hospital acquires a lien upon the tortfeasor's insurance for the value of services "rendered to a person injured in any accident."

---

3. The parties did not allege Shane and Cory Stegman waived their right to appeal by accepting substantial benefits under the judgment. *See, e.g., Bangen v. Bartelson*, 553 N.W.2d 754, 757–58 (N.D.1996).

## A

[¶ 13] Shane and Cory Stegman argue the hospital lien statute does not apply in this case because Dennis Stegman was not an "injured person" under the statute. This argument is premised upon their contention that, because Dennis Stegman never regained consciousness after the accident and did not suffer conscious pain and suffering, he was not an "injured person" and had no personal injury action against Puls. In their brief on appeal, Shane and Cory Stegman summarize their argument:

Because Mr. Stegman did not experience conscious pain and suffering prior to his death and is not therefore considered an "injured party" under N.D.C.C. § 35–18–01, only the wrongful death claim of the surviving children was valid against the liability policy tendered to the district court. Without consciousness, neither Mr. Stegman nor his heirs or his estate would have been able to recover any damages for his personal injury. Any potential injury claim absent consciousness ended with Mr. Stegman's death.

[¶ 14] Shane and Cory Stegman's argument is based upon a serious misconception of tort law. They argue neither Dennis Stegman nor his estate could have brought a personal injury action against Puls because Dennis Stegman never suffered conscious pain and suffering. Conscious pain and suffering, however, is only one permissible element of damages in a personal injury action. There are several other types of damages that are recoverable and will support a personal injury action:

Economic and noneconomic damages for wrongful death or injury to person. In any civil action for damages for wrongful death or injury to a person and whether arising out of breach of contract or tort, damages may be awarded by the trier of fact as follows:

1. Compensation for economic damages, which are damages arising from medical expenses and medical care, rehabilitation services, custodial care, loss of earnings and earning capacity, loss of income or support, burial costs, cost of substitute domestic services, loss of employment or business or employment opportunities and other monetary losses.

2. Compensation for noneconomic damages, which are damages arising from pain, suffering, inconvenience, physical impairment, disfigurement, mental anguish, emotional distress, fear of injury, loss or illness, loss of society and companionship, loss of consortium, injury to reputation, humiliation, and other nonpecuniary damage.

N.D.C.C. § 32–03.2–04; *see also Albrecht v. Metro Area Ambulance,* 2001 ND 61, ¶¶ 11–14, 623 N.W.2d 367; *Barta v. Hinds,* 1998 ND 104, ¶¶ 7–11, 578 N.W.2d 553; *Fontes v. Dixon,* 544 N.W.2d 869, 871–72 (N.D.1996); *cf.* N.D.C.C. § 26.1–41–01(1) and (8) (defining an injured person as one "who sustains accidental bodily injury," which is defined as "bodily injury ..., including death resulting therefrom, arising out of the operation of a motor vehicle").

[¶ 15] Clearly a personal injury action existed on behalf of Dennis Stegman against Puls for various damages, including the medical expenses occasioned by the accident, and that action survived Dennis Stegman's death. *See* N.D.C.C. § 28–01–26.1. Either Dennis Stegman's estate or Dennis Stegman himself, had he lived, could have brought a personal injury action against Puls for those damages, and Puls's liability insurance would have covered the claim. Thus, Dennis Stegman

was an "injured person" under N.D.C.C. § 35–18–01, and Altru had a lien against Puls's liability insurance.

### B

[¶ 16]  In their reply brief, Shane and Cory Stegman argue Altru could not collect upon any lien because the lien attaches only to claims against persons liable to the "injured person" and "may be executed only if an insurance carrier or tortfeasor pays monies to the injured person." Thus, they argue, Altru cannot satisfy its lien because Dennis Stegman never received proceeds from Puls's insurance policy.

[¶ 17]  Shane and Cory Stegman have misconstrued the hospital lien statute.  The lien attaches not only to claims for relief, judgments, and settlement proceeds, but also attaches directly to the tortfeasor's liability insurance.  *See* N.D.C.C. § 35–18–01; *see also In re Dueis,* 130 B.R. 83, 85 (Bankr.D.N.D.1991). Section 35–18–01, N.D.C.C., provides the lien attaches "to insurance of the tortfeasor payable by reason of the liability occasioned by such injury, and to any insurance or indemnity payable to the injured person by any insurer."  The statute does not say the lien attaches only to insurance proceeds "paid" to the injured person.  The plain language of the statute creates a lien on any insurance that would be "payable" for the injury, and does not require actual payment of the insurance proceeds to the injured person before the lien attaches.  As this Court has previously held, the lien attaches immediately upon rendering of the medical services.  *Rolla Cmty. Hosp., Inc. v. Dunseith Cmty. Nursing Home, Inc.,* 354 N.W.2d 643, 650 (N.D.1984); *see also Dueis,* 130 B.R. at 85; *In re Smith,* 119 B.R. 714, 722 (Bankr. D.N.D.1990);  Robert T. Laurence, *A Survey of Statutory Liens in North Dakota,* 1

U.N.D. Fac. J. 100, 109 (1982) ("the hospital lien is in the nature of an assignment of a cause of action").  Furthermore, N.D.C.C. § 35–18–05 provides that after a hospital files a notice of hospital lien, an insurer that makes any payment to the injured person in settlement of the injured person's claims remains liable to the hospital for the full amount of the lien.  The statutory scheme creates a lien on the insurance policy itself, and not only upon the proceeds after they are paid to the injured person.

### C

[¶ 18]  Shane and Cory Stegman argue the hospital lien statute must be construed so it does not conflict with the wrongful death statute.  They argue allowance of a hospital lien under the facts in this case would violate N.D.C.C. § 32–21–04, which provides that in a wrongful death action "[t]he amount recovered shall not be liable for the debts of the decedent, but shall inure to the exclusive benefit of the decedent's heirs at law."  By its terms, the statute applies only to amounts "recovered" in a wrongful death action.  It does not apply to defeat the hospital's lien against Puls's liability insurance, which attached before Dennis Stegman died. There was no attempt to enforce the hospital's lien against amounts which had been "recovered" in a wrongful death action.

### D

[¶ 19]  We conclude the trial court did not err in holding Altru had a valid, enforceable hospital lien against Puls's liability insurance.

### IV

[¶ 20]  Shane and Cory Stegman argue that assuming Altru had a valid lien, the trial court erred in allowing Altru to collect the full amount of its lien rather

than equitably allocating the insurance proceeds among the various claimants.

[¶ 21] The very nature of a lien is to identify specific property as to which the lienholder will have priority over other creditors. *See* N.D.C.C. §§ 35–01–02 and 35–01–14; 53 C.J.S. *Liens* § 14 (1987). When there are multiple liens against the same property, they take priority according to the time of their creation—the "first in time, first in right" rule. N.D.C.C. § 35–01–14; *see also* Robert T. Laurence, *A Survey of Statutory Liens in North Dakota*, 1 U.N.D. Fac. J. 100 (1982).

[¶ 22] When the legislature creates statutory liens, it makes a policy decision that certain creditors will have a preference over other creditors as to certain property. In *Rolla Cmty. Hosp., Inc. v. Dunseith Cmty. Nursing Home, Inc.*, 354 N.W.2d 643, 647–48 (N.D.1984), this Court concluded the obvious reason the legislature created the hospital lien is that "a hospital in an emergency situation involving a person *requiring* medical treatment has very little recourse but to admit the person and render the necessary services."

[¶ 23] This Court addressed the public policy reasons for creating preferences in favor of certain creditors in *Thompson v. Danner*, 507 N.W.2d 550, 559 (N.D.1993):

As the trial court reasoned, allowing a farmer a first priority lien for the expense of harvesting his own crops would result in the farmer defeating the rights of the lender who advanced the funds to finance the farming operation in the first instance. Lenders would be understandably reluctant to advance operating funds. We do not believe the legislature intended such a result.

The same rationale applies to a hospital lien. The legislature created the hospital lien to encourage medical providers to render necessary emergency medical treatment to all parties, *see Rolla Cmty. Hosp.*, 354 N.W.2d at 647–48, and the lien gives the hospital some assurance of receiving payment for those services.

[¶ 24] Further support for the conclusion that Altru is entitled to recover the full amount of the medical services rendered to Dennis Stegman is provided by N.D.C.C. § 35–18–05:

The filing of a hospital statement, from the time of filing thereof, is constructive notice to all persons of the claim of the hospital and of its right to a lien upon any claim or demand or claim for relief against the tort-feasors and the insurer or insurers of the tort-feasors, or an insurer of the injured person, and no release of any judgment, claim, or demand by the injured person is valid or effective as against the lien. The person, corporation, or limited liability company making any payment to the injured person, or to his legal representative, as compensation for injuries sustained, in settlement of a claim for relief claimed to exist for negligence causing such injuries, or out of insurance carried by the tort-feasor, *shall remain liable to the hospital for the amount of the reasonable charges due at the time of such payment* to the extent of the full amount so paid or given to the injured person.

(Emphasis added). Under this statute, an insurer that settles a claim with an injured person after the hospital has filed notice of its hospital lien remains liable to the hospital for the amount of the medical services provided. This provision indicates there is to be no equitable allocation among claimants to the insurance proceeds, but rather the hospital's lien has priority.

[¶ 25] We also note the hospital lien statute establishes a priority to the insurance proceeds, but does not bar heirs from otherwise collecting the full amount of

their damages from the tortfeasor. Although Shane and Cory Stegman argue it is inequitable that they will recover less than their full damages occasioned by the wrongful death of their father, the record does not indicate they have attempted to recover additional damages from Puls. Their inability to fully recover is ultimately caused not by the lien given to the hospital but by the fact the tortfeasor was underinsured and perhaps judgment-proof, or by Shane and Cory Stegman's decision not to pursue additional claims against Puls. Otherwise, the heirs would be able to collect their full damages from the party who actually caused the harm.

[¶ 26]   We conclude the trial court did not err in allowing Altru to recover the full amount of its lien from the insurance proceeds.

V

[¶ 27]   We conclude Altru had a valid hospital lien and was entitled to collect the value of the medical services rendered to Dennis Stegman from the proceeds of Puls's liability insurance.  The judgment is affirmed.

[¶ 28] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER and WILLIAM A. NEUMANN, concur.

MARY MUEHLEN MARING, J.: I concur in the result.