2002 ND 140

**MR. G'S TURTLE MOUNTAIN LODGE, INC., Plaintiff and Appellant,**

v.

**ROLAND TOWNSHIP, Michael Sturdevant, Defendants and Appellees.**

Bill Light, Ken Nelson, Clayton Lider and Jeff Monson, Defendants.

No. 20010202.

Supreme Court of North Dakota.

Aug. 23, 2002.

James Edward Nostdahl (argued) and Brent Michael Olson (on brief), Pringle & Herigstad, P.C., Minot, for plaintiff and appellant.

Collin Paul Dobrovolny (argued) and Bryan Lee Van Grinsven (appeared), McGee, Hankla, Backes & Dobrovolny, Minot, for defendant and appellee Roland Township.

James S. Hill (argued) and Rebecca S. Thiem (on brief), Zuger Kirmis & Smith, Bismarck, for defendant and appellee Michael Sturdevant.

KAPSNER, Justice.

[¶ 1] Mr. G's Turtle Mountain Lodge, Inc. ("Mr. G's") appealed from summary judgments dismissing its claims against Roland Township, Michael Sturdevant, Clayton Lider, Jeff Monson, Bill Light, and Ken Nelson. We dismiss Mr. G's attempted appeal from the judgment dismissing its claims against Michael Sturdevant, concluding the appeal is jurisdictionally barred and Mr. G's waived its right to appeal when it voluntarily paid the judgment. We affirm the judgment dismissing Mr. G's claims against Roland Township, concluding that Mr. G's failed to raise a genuine issue of material fact on an essential element of its wrongful interference with business claim and that an allegedly libelous communication was not fairly susceptible of a defamatory meaning.[1]

I

[¶ 2] In March 1999, Mr. G's purchased the Turtle Mountain Lodge on Lake Metigoshe. When the lodge proved unprofitable, Mr. G's closed it in September 1999 and had it razed. In November 1999, Mr. G's requested that the Roland Township Board of Supervisors ("the Board") rezone the property from commercial to residential. Mr. G's intended to subdivide the property and sell lots on the lake. The Board met on December 10, 1999, to consider Mr. G's request. Members of the Board expressed concerns to Mr. G's representatives about lot size, setback requirements, lot configurations, and other zoning requirements, and indicated there would be problems with issuing building permits for the lots. The Board approved the zoning change from commercial to residential, but did not approve a plat map.

[¶ 3] Mr. G's subsequently had a plat map prepared and recorded it with the Bottineau County Register of Deeds on

---

1. Prior to oral argument, Light and Nelson moved to dismiss the appeal from the judgment dismissing Mr. G's claims against them. We granted the motion to dismiss the appeal on March 6, 2002. Mr. G's has not challenged on appeal the dismissal of its claims against Lider and Monson and has conceded in its brief that Lider and Monson are not involved in the appeal. Accordingly, we are only concerned with the appeals of the dismissal of claims against Roland Township and Sturdevant.

January 26, 2000. A dispute arose regarding the legality of recording a plat map which had not been approved by the Board. Two Board members and Michael Sturdevant, the Board's attorney, met with representatives of Mr. G's and John Gregg, who was Mr. G's attorney and was also the States Attorney for Bottineau County. Gregg ultimately advised the Bottineau County Register of Deeds that it was legal to record the plat map without the approval of the Board.[2]

[¶4] Mr. G's scheduled a public auction for February 12, 2000, to sell the lots as described in the plat map. When the Board learned of the scheduled public auction, it authorized Sturdevant to send a letter to the editors of two area newspapers advising the public about possible problems with zoning and issuance of building permits for the lots. The two essentially identical letters, published on February 6 and February 8, 2000, stated:

As attorney for Roland Township (Bottineau County) Board of Supervisors, I am writing with regard to the auction sale of lots on Hahn's Bay Shores at Lake Metigoshe which was recently advertised in the Daily News. We believe that the public should be given notice that this property is subject to the Roland Township zoning ordinance and that plat of Hahn's Bay Shores was recorded without the consent of the township supervisors.

Copies of the Roland Township zoning ordinance have been provided to the Minot Public Library and the Bottineau County Library. Persons considering the purchase of any of these lots should carefully review the provisions of the zoning ordinance relating to residential districts. Building permits are required

and cannot be issued for nonconforming construction in new developments.

[¶5] The auction took place as scheduled. Bids on two lots were received, but Mr. G's rejected the bids because they were below the minimum acceptable bids Mr. G's had predetermined for those lots.

[¶6] On March 3, 2000, Mr. G's brought this action against Roland Township; Sturdevant; Clayton Lider and Jeff Monson, members of the Board; and Bill Light and Ken Nelson, neighboring landowners. The complaint alleged tortious interference with business relationships, deceit, slander of title, civil libel, slander, and inverse condemnation. On motions for summary judgment, the district court dismissed all claims against Sturdevant, Light, and Nelson, found the claims against those defendants were frivolous, and awarded those defendants their actual costs and attorney's fees for defending the actions. The court also granted summary judgment dismissing all claims against Roland Township, Lider, and Monson, concluding there were no genuine issues of material fact and the defendants were entitled to judgment as a matter of law. Mr. G's appealed.

II

[¶7] Sturdevant argues Mr. G's attempted appeal from the judgment dismissing the claims against him should be dismissed because the formal satisfaction of the judgment jurisdictionally bars the appeal and Mr. G's voluntary payment of the judgment constitutes a waiver of the right to appeal.

A

■ [¶8] The district court granted summary judgment dismissing Mr. G's

---

**2.** The Board and Sturdevant now concede that the Board's approval was not required prior to filing the plat map.

claims against Sturdevant, finding the claims were frivolous. The court awarded Sturdevant actual costs and attorney's fees in the amount of $36,632.00 for defending the frivolous action. Mr. G's paid the judgment, procured a satisfaction of judgment from Sturdevant's attorney, and filed the satisfaction of judgment with the clerk of court. The satisfaction of judgment was properly acknowledged as required by N.D.C.C. § 28–20–24. *See Nodak Mut. Ins. Co. v. Stegman,* 2002 ND 113, 647 N.W.2d 133, ¶¶ 8–9.

[¶ 9] We have recently held that an attempted appeal from a judgment that has been properly satisfied of record fails for lack of jurisdiction:

> A judgment that has been paid and satisfied of record ceases to have any existence. *Lyon v. Ford Motor Co.,* 2000 ND 12, ¶ 10, 604 N.W.2d 453. A satisfaction of judgment on the record extinguishes the claim, and the controversy is deemed ended, leaving an appellate court with nothing to review. *De-Coteau v. Nodak Mut. Ins. Co.,* 2001 ND 182, ¶ 10, 636 N.W.2d 432; *Lyon,* at ¶ 10. An appellate court is without jurisdiction if there is no actual and justiciable controversy. *Gregory v. North Dakota Workers Comp. Bureau,* 1998 ND 94, ¶ 22, 578 N.W.2d 101. Thus, an attempted appeal from a judgment that has been satisfied of record fails for lack of jurisdiction.

*Stegman,* 647 N.W.2d 133, 2002 ND 113, ¶ 7.

[¶ 10] Further support for this conclusion is found in N.D.C.C. § 28–05–10, which provides:

> A civil action in a district court is deemed to be pending from the time of its commencement until its final determination upon appeal or until the time for appeal has passed, unless the judgment is sooner satisfied.

Thus, when a judgment is satisfied before the time for appeal has expired, the action is no longer pending. Once an action is no longer pending under N.D.C.C. § 28–05–10, a court is without jurisdiction unless a motion is made to reinvoke jurisdiction. *Fichter v. Kadrmas,* 507 N.W.2d 72, 75 (N.D.1993).

[¶ 11] We further concluded in *Lyon,* 2000 ND 12, ¶ 13, 604 N.W.2d 453, that "a party who voluntarily pays a judgment against him waives the right to appeal from the judgment." Consequently, Mr. G's waived its right to appeal when it voluntarily paid the judgment to Sturdevant.

[¶ 12] Mr. G's argues that it did not pay the judgment voluntarily, but rather paid it under duress. Mr. G's contends that it only paid the various judgments to remove the judgment liens against the property in order to clear the way for a pending sale of some of the lots.

[¶ 13] While voluntary payment of a judgment waives the right to appeal, payment of a judgment under coercion or duress does not constitute a waiver. *Twogood v. Wentz,* 2001 ND 167, ¶ 5, 634 N.W.2d 514; *Lyon,* 2000 ND 12, ¶ 14, 604 N.W.2d 453. The question whether a judgment has been voluntarily paid depends upon the facts and circumstances of each particular case, and the party seeking dismissal of the appeal bears the burden of showing the judgment was paid voluntarily. *Twogood,* at ¶ 5; *Lyon,* at ¶ 14. A showing that the judgment has been paid, however, creates a presumption that the payment was voluntary. *Twogood,* at ¶ 5; *Lyon,* at ¶ 14.

[¶ 14] Mr. G's argues it paid the judgment under coercion or duress because it needed to remove the judgment lien to facilitate a pending sale of the property.

However, under N.D.C.C. § 28–20–29, a judgment debtor may have the judgment lien against the property released by either depositing sufficient funds with the clerk of court or posting a supersedeas bond. *Lyon,* 2000 ND 12, ¶ 12, 604 N.W.2d 453. Mr. G's did not avail itself of these statutory options to release the lien, but paid the judgment to Sturdevant and procured and filed a satisfaction of judgment on the record. Under these circumstances, Mr. G's payment of the judgment was voluntary and constituted a waiver of the right to appeal.

[¶ 15] Mr. G's also argues that dismissal is inappropriate because it paid only a cost judgment, not a judgment based upon the merits of its claims. Mr. G's argues our holding in *Twogood,* which differentiated between payment of a cost judgment and one which goes to the merits, supports the assertion that it has not waived its right to appeal.

[¶ 16] In *Twogood,* we concluded that payment of a cost judgment, which did not "in any way go to the merits of the case," did not defeat the right to appeal in that case. *Twogood,* 2001 ND 167, ¶¶ 7–8, 634 N.W.2d 514. We carefully noted that the $1,300 in costs assessed against Twogood "did not go to the merits of the case." *Id.* at ¶ 8. In this case, the district court determined Mr. G's action against Sturdevant was frivolous and, based upon that determination, ordered Mr. G's to pay Sturdevant's actual costs and attorney's fees in the amount of $36,632.00. Unlike an ordinary judgment for statutory costs to a prevailing plaintiff, an award of actual costs and attorney's fees for bringing a frivolous action is based upon, and goes to, the merits of the case. When Mr. G's paid the judgment for actual costs and attorney's fees, it waived its right to appeal from the judgment.

[¶ 17] We conclude that Mr. G's waived its right to appeal from the judgment dismissing its claims against Sturdevant, and that the appeal is jurisdictionally barred. We therefore dismiss the appeal from that judgment.

B

[¶ 18] Although Roland Township has not argued for dismissal of the appeal from the judgment dismissing Mr. G's claims against it, formal satisfaction of the judgment on the record raises a jurisdictional issue which we may raise sua sponte. *See Stegman,* 2002 ND 113, 647 N.W.2d 133, ¶¶ 6–10. Although Mr. G's paid the judgment in favor of Roland Township and procured and filed a satisfaction of judgment, the satisfaction of judgment does not meet the requirements of N.D.C.C. § 28–20–24 because it was not notarized or otherwise witnessed and authenticated. *See Stegman,* at ¶¶ 8–10. Accordingly, the judgment was not formally satisfied of record and the appeal is not jurisdictionally barred. *Id.* at ¶ 10.

[¶ 19] We also note that the judgment against Roland Township is a pure cost judgment which does not in any way go to the merits of the case. Thus, Mr. G's payment of the judgment did not constitute a waiver of the right to appeal. *See Twogood,* 2001 ND 167, ¶¶ 7–8, 634 N.W.2d 514.

III

[¶ 20] Mr. G's argues the district court erred in granting summary judgment dismissing its claims against Roland Township for tortious interference with business relationships and civil libel.

A

[¶ 21] Summary judgment is a procedural device for promptly and expeditiously disposing of an action without a

trial if either party is entitled to judgment as a matter of law and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes will not alter the result. *Knutson v. County of Barnes,* 2002 ND 68, ¶ 11, 642 N.W.2d 910. The evidence must be viewed in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. *Dalan v. Paracelsus Healthcare Corp.,* 2002 ND 46, ¶ 7, 640 N.W.2d 726.

[¶ 22]   We recently outlined the duty of a party opposing a summary judgment motion:

> Although the party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, the party resisting the motion may not simply rely upon the pleadings. Nor may the opposing party rely upon unsupported, conclusory allegations. The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.

> In summary judgment proceedings, neither the trial court nor the appellate court has any obligation, duty, or responsibility to search the record for evidence opposing the motion for summary judgment. The opposing party must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief.

*Anderson v. Meyer Broad. Co.,* 2001 ND 125, ¶ 14, 630 N.W.2d 46 (quoting *Peterson v. Zerr,* 477 N.W.2d 230, 234 (N.D.1991)).

[¶ 23]   Summary judgment is appropriate when a party fails to establish the existence of a factual dispute on an essential element of his claim on which he will bear the burden of proof at trial. *Dalan,* 2002 ND 46, ¶ 7, 640 N.W.2d 726; *Anderson,* 2001 ND 125, ¶ 15, 630 N.W.2d 46.   When no pertinent evidence on an essential element is presented to the trial court in resistance to a motion for summary judgment, it is presumed no such evidence exists. *Anderson,* at ¶ 15; *Van Valkenburg v. Paracelsus Healthcare Corp.,* 2000 ND 38, ¶ 27, 606 N.W.2d 908.

**B**

[¶ 24]   Mr. G's argues the district court erred in dismissing its claim for tortious interference with business relationships. Mr. G's contends that the letters to the editor published at the direction of the Board interfered with Mr. G's reasonable business expectancy to sell the lots.

[¶ 25]   We recognized the existence of a tort action for unlawful interference with business in *Trade 'N Post v. World Duty Free Americas, Inc.,* 2001 ND 116, 628 N.W.2d 707.   We outlined the five elements of the tort:

> (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an independently tortious or otherwise unlawful act of interference by the interferer; (4) proof that the interference caused the harm sustained; and (5) actual damages to the party whose relationship or expectancy was disrupted.

*Trade 'N Post,* at ¶ 36.

[¶ 26]   The gravamen of Mr. G's unlawful interference with business claim

is its assertion that the letters to the editor prevented prospective purchasers from making bids on the lots. Roland Township argues that Mr. G's failed to present any evidence that the letters caused prospective bidders to refrain from bidding.

[¶ 27] William Gendreau, one of the principals of Mr. G's, testified in his deposition that he could not identify anyone whose decision whether to bid or attend the auction was influenced by the letters. Two prospective purchasers who were deposed testified that they were aware of the letters but that the letters did not influence their decision to bid. One of the two in fact bid $35,000 for one of the lots, but Mr. G's rejected the bid because it fell below Mr. G's predetermined minimum bid for the lot. When the only witnesses who might have been influenced by the alleged interference testify that it had no effect upon their decision whether to enter into a business relationship with the plaintiff, there has been no showing of unlawful interference. *See Hunt v. University of Minnesota*, 465 N.W.2d 88, 96 (Minn.Ct. App.1991).

[¶ 28] Mr. G's has not drawn our attention to any evidence in the record which supports its assertion the letters to the editor caused the failure of its attempted auction sale of the lots. In essence, Mr. G's argues it did not receive what it considered adequate bids for the lots, so the letters must be the reason for the failure of the sale. This is mere conjecture that a causal connection existed between the publication of the letters and the decision of individual purchasers to bid on the lots. There may have been numerous other factors which caused the failure of the sale. Mere speculation will not defeat a motion for summary judgment. *Ellingson v. Knudson*, 498 N.W.2d 814, 818 (N.D.1993).

[¶ 29] We conclude Mr. G's failed to present competent, admissible evidence

raising a genuine issue of material fact on an essential element of its claim on which it bore the burden of proof at trial. Summary judgment was therefore appropriate.

C

[¶ 30] Mr. G's argues the district court erred in granting summary judgment dismissing its claim against Roland Township for civil libel.

[¶ 31] Civil libel is a form of defamation, N.D.C.C. § 14–02–02, and is defined in N.D.C.C. § 14–02–03:

Libel is a false and unprivileged publication by writing . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes the person to be shunned or avoided, or which has a tendency to injure the person in the person's occupation.

[¶ 32] Mr. G's contends the letters to the editor implied wrongful conduct by Mr. G's and damaged its business reputation. Specifically, Mr. G's argues that the sentence in the letter indicating the plat was recorded without the consent of the Board leads to an inference "that there was something wrong or illegal about the lots." Mr. G's concedes that the sentence is technically not false: the plat was recorded without the Board's consent. Mr. G's argues, however, that the letter suggests by innuendo that the plat was wrongfully recorded.

[¶ 33] To be defamatory, a statement must be false. *Jose v. Norwest Bank North Dakota, N.A.*, 1999 ND 175, ¶ 24, 599 N.W.2d 293; *Eli v. Griggs County Hosp. and Nursing Home*, 385 N.W.2d 99, 101 (N.D.1986). However, statements which are technically true on their face, but which by innuendo, insinuation, or sarcasm convey an untrue and defamatory meaning, may constitute civil libel. *See*

*Moritz v. Medical Arts Clinic, P.C.*, 315 N.W.2d 458, 460 (N.D.1982).

[¶ 34] When the communication is not libelous per se, it is for the judge to decide whether the communication is capable of a particular meaning and whether that meaning is defamatory. *Moritz,* 315 N.W.2d at 460. In *Moritz,* this Court quoted Restatement (Second) of Torts § 614 about the respective roles of the trial court and the jury:

> In Restatement Second, Torts ¶ 614, the function of the court and jury is discussed. We quote:
>
> "(1) The court determines
>
> "(a) whether a communication is capable of bearing a particular meaning, and
>
> "(b) whether that meaning is defamatory.
>
> "(2) The jury determines whether a communication, capable of a defamatory meaning, was so understood by its recipient."

[¶ 35] In comment (b) to this section it is said:

> "Under the rule stated in this Section, the determination of the first two of these questions is for the court and that of the third for the jury. The court determines whether the communication is capable of bearing the meaning ascribed to it by the plaintiff and whether the meaning so ascribed is defamatory in character. If the court decides against the plaintiff upon either of these questions, there is no further question for the jury to determine and the case is ended."

*Moritz,* at 460.

[¶ 36] In determining whether words are libelous and actionable, the language complained of must be construed in the context of the entire document, and the sense or meaning of the document must be determined by construing words according to the natural and ordinary meaning a reasonable person of ordinary intelligence would give them. *Id.* at 461. A communication is not libelous if the language used is not fairly susceptible of a defamatory meaning. *Little v. Spaeth,* 394 N.W.2d 700, 706 (N.D.1986); *Moritz,* at 460.

[¶ 37] Reading the challenged language in the context of the entire letter, we conclude as a matter of law that the language is not reasonably and fairly capable of bearing the defamatory meaning suggested by Mr. G's. The sentence at issue states: "We believe that the public should be given notice that this property is subject to the Roland Township zoning ordinances and that plat of Hahn's Bay Shores was recorded without the consent of the township supervisors." The letter then advises that potential purchasers should review the zoning ordinances and that building permits will be required. Read in context, the statement that the plat was not approved by the township supervisors suggests only that the Board has not approved the plat or authorized building upon the lots as configured, and potential purchasers must consult the relevant zoning ordinances to determine whether the lots conform to those ordinances.

[¶ 38] This Court has indicated defamation will not lie where only a forced construction will place a defamatory connotation on the communication:

> It is our opinion that only a tortured construction of the words of the letter could support such a meaning and even then the reader would have to be predisposed to imagine activities far beyond the ordinary import of the words used. . . . We . . . conclude that the words used in this case were "obviously innocent: words which cannot properly

be construed so as to convey any imputation on the plaintiff." No imagined innuendo can alter the sense or supply a meaning to a document which is not there. A court will not put a forced construction on words which may fairly be deemed harmless. The fact that plaintiff places a defamatory connotation on the statement does not make it actionable.

*Moritz*, 315 N.W.2d at 461 (quoting *State v. Haider*, 150 N.W.2d 71, 74 (N.D.1967)) (citations omitted). The Court concluded that "[i]magination and suspicion are not determinative—the meaning of the words is what counts." *Moritz*, at 462.

[¶ 39] We conclude that the truthful and innocuous language of the letters is not fairly susceptible of a defamatory meaning. Accordingly, the district court did not err in dismissing the civil libel claim against Roland Township.

### IV

[¶ 40] We have considered the remaining issues raised by the parties and they are either unnecessary to our decision or are without merit. We dismiss the appeal from the judgment dismissing Mr. G's claims against Sturdevant. We affirm the judgment dismissing Mr. G's claims against Roland Township.

[¶ 41] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, JJ., ALLAN L. SCHMALENBERGER, D.J., and MICHAEL O. McGUIRE, D.J.

[¶ 42] The Honorable ALLAN L. SCHMALENBERGER, D.J., and the Honorable MICHAEL O. McGUIRE, D.J., sitting in place of MARING, J., and NEUMANN, J., disqualified.