2006 ND 167

**The RAMSEY FINANCIAL CORPORATION, Plaintiff and Appellee**

v.

**John C. HAUGLAND, Ruth S. Haugland, Oscar Dammen and Lenora Dammen, Defendants and Appellants.**

No. 20050375.

Supreme Court of North Dakota.

July 26, 2006.

Rehearing Denied Aug. 24, 2006.

Joseph A. Turman (argued), DeMars & Turman, Fargo, N.D., and Evan F. Heustis (on brief), Ramsey National Bank & Trust Company, Devils Lake, N.D., for plaintiff and appellee.

James P. Wang, Minnewaukan, N.D., for defendants and appellants.

KAPSNER, Justice.

[¶ 1]  John C. Haugland, Ruth S. Haugland, Oscar Dammen, and Lenora Dammen appealed from a summary judgment ordering them to tender their shares of preferred stock in The Ramsey Financial Corporation ("Ramsey") to Ramsey for $134.25 per share and dismissing their counterclaims against Ramsey.  We dismiss the Dammens' appeal because it is moot, and we affirm the judgment against the Hauglands because they failed to follow the procedures for asserting dissenting shareholder rights under the Business Corporation Act, N.D.C.C. ch. 10–19.1.

I

[¶ 2]  Incorporated in August 1981, Ramsey is a bank holding company located in Devils Lake. Ramsey was authorized to issue 18,000 shares of cumulative non-voting preferred shares of stock and to issue common shares of stock.  Through the years, the Hauglands acquired 521 shares of preferred stock and the Dammens acquired 8,377 shares of preferred stock.

[¶ 3]  In June 2003, Ramsey's board of directors informed the shareholders that a special meeting would be held on July 1, 2003, to allow them to discuss and vote on a proposed resolution which would amend the articles of incorporation to allow for the redemption of preferred stock.  The proposed resolution stated redemption of the preferred stock would be in the best interests of the corporation because "the elimination of a second class of stock would enhance the corporation's ability to elect Sub-chapter S status under the Internal Revenue Code, which is a long term goal of the corporation."  The notice of the special meeting further provided that "[a]lthough preferred shares are non-voting shares, holders of such shares will be permitted to vote on this issue since the proposed resolution affects their rights as stockholders."  A proposed resolution, which authorized the board of directors to amend the articles of incorporation to allow redemption of the preferred shares, was passed at the July 1, 2003, meeting. On October 8, 2003, the board of directors voted to pass a resolution to amend the articles of incorporation to permit Ramsey to purchase the outstanding shares of the preferred stock.

[¶ 4]  On October 9, 2003, the board of directors gave notice of a second meeting of common and preferred shareholders on October 21, 2003, to permit the shareholders to vote on the resolution under N.D.C.C. § 10–19.1–19. The notice further provided:

> In the event of a consenting vote on this Resolution, preferred shareholders who do not agree with the adoption of the Amendment have certain rights as dissenting shareholders set out in North Dakota Century Code 10–19.1–87 and 10–19.1–88, copies of which are enclosed for your information.

The notice stated the directors would announce at the meeting the price that would be paid for the preferred shares and the method used to establish the price, and the resolution provided that Ramsey would

pay a dividend on all outstanding preferred shares on December 31, 2003, and that the redemption would occur on January 2, 2004.

[¶ 5] Although the Hauglands and Dammens voted against the resolution at the October 21, 2003, meeting, the vast majority of shareholders voted for the resolution. On December 4, 2003, Ramsey notified its preferred shareholders that the redemption price per share on January 2, 2004, would be $134.25, as "determined by an independent appraisal." On January 2, 2004, a notice of dissenting shareholders' rights was sent to dissenting shareholders informing them that "[a]ny demand for payment under the shareholders' rights set out by law and the accompanying stock certificates, must be sent [to Ramsey] by February 3, 2004." This notice again informed the dissenting shareholders of their rights under N.D.C.C. §§ 10–19.1–87 and 10–19.1–88.

[¶ 6] On January 16, 2004, the Hauglands sent Ramsey a letter refusing to convey their preferred shares of stock to the corporation. On February 3, 2004, the Dammens also sent Ramsey a letter stating that they refused to convey their preferred shares back to the corporation. The amendment to Ramsey's articles of incorporation was filed with the Secretary of State on February 11, 2004. In September 2004, after the Hauglands and Dammens had failed to surrender their preferred shares to the corporation, Ramsey brought this declaratory judgment action against them seeking a declaration of "the respective duties and obligations of the parties." The district court granted Ramsey's motion for summary judgment, concluding the Hauglands and the Dammens "failed to exercise their dissenting shareholders rights as required by statute," and as a result, they were entitled to the $134.25 per share determined to be the

"fair value" of the shares by an independent third party appraiser. The court ordered the Hauglands and Dammens to tender their preferred shares to Ramsey, and dismissed their counterclaims against Ramsey.

II

[¶ 7] Under N.D.R.App.P. 42(c), Ramsey has informed this Court that approximately one month after the Dammens filed their notice of appeal, they presented their preferred shares to the corporation and received $134.25 per share as ordered by the district court. Ramsey argues the Dammens' tender of shares and receipt of payment renders the controversy between the corporation and the Dammens moot. We agree.

[¶ 8] We will dismiss an appeal if the issues become moot or academic and no actual controversy is left to be determined. *DeCoteau v. Nodak Mut. Ins. Co.*, 2001 ND 182, ¶ 10, 636 N.W.2d 432. An actual controversy no longer exists when the issue has been rendered moot by a lapse of time, or the occurrence of related events which make it impossible for a court to grant effective relief. *Mr. G's Turtle Mountain Lodge, Inc. v. Roland Township*, 2002 ND 140, ¶ 9, 651 N.W.2d 625. *In re E.T.*, 2000 ND 174, ¶ 5, 617 N.W.2d 470.

[¶ 9] In *Lyon v. Ford Motor Co.*, 2000 ND 12, ¶ 13, 604 N.W.2d 453, this Court held that a party who voluntarily pays a judgment against him waives the right to appeal from the judgment. In doing so, we overruled a line of older North Dakota cases holding that voluntary payment or satisfaction of a judgment does not waive the right to appeal, if repayment may be enforced or the effect of compliance may be otherwise undone in case of reversal, and unless the payment was intended as a compromise or there was an

express agreement to not pursue an appeal. *Id.* at ¶¶ 7, 9, 10. One of the cases we overruled was *Workman v. Salzer Lumber Co.*, 51 N.D. 280, 199 N.W. 769 (1924), in which this Court held the defendant's voluntary return of property to the plaintiff after the lower court ordered the return of property did not constitute a waiver of the right to appeal. In this case, the Dammens returned the stock certificates to Ramsey and received payment for those shares, precisely what the district court ordered. Although the Dammens made no payment, voluntary acquiescence in a judgment also constitutes a waiver of the right to appeal, *see, e.g., Messer v. Henlein*, 72 N.D. 63, 66, 4 N.W.2d 587, 588–89 (1942); *In re McKee's Estate*, 69 N.D. 203, 208, 285 N.W. 72, 74 (1939), and formal execution of a satisfaction of judgment is not a prerequisite for this principle to apply. *See, e.g., McKee's Estate; Grady v. Hansel*, 57 N.D. 722, 725, 223 N.W. 937 (1929).

[¶ 10] While voluntary payment of or acquiescence in a judgment waives the right to appeal, payment or acquiescence under coercion or duress does not constitute a waiver. *See Roland Township*, 2002 ND 140, ¶ 13, 651 N.W.2d 625; *Twogood v. Wentz*, 2001 ND 167, ¶ 5, 634 N.W.2d 514; *Lyon*, 2000 ND 12, ¶ 14, 604 N.W.2d 453. When there is no showing other than that there was acquiescence in or payment of a judgment, a presumption arises that the acquiescence or payment was voluntary. *Lyon*, at ¶ 14. Here, there is no indication the Dammens' compliance with the judgment was anything other than voluntary. Their tender of shares and receipt of payment are directly related to the merits of the case. *Compare Twogood*, at ¶¶ 7–8 (payment of cost judgment which did not in any way go to merits of case did not defeat right to appeal). We conclude the Dammens' appeal is moot and we dismiss it.

### III

[¶ 11] The Hauglands argue the district court erred in granting summary judgment ordering them to tender their shares to Ramsey for the offered price of $134.25 per share. They contend the court should have determined the fair value of their shares.

[¶ 12] Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no disputed genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Bernabucci v. Huber*, 2006 ND 71, ¶ 14, 712 N.W.2d 323. Whether a district court properly granted summary judgment is a question of law that we review de novo on the entire record. *Id.*

### A

[¶ 13] The Hauglands contend the district court erroneously concluded that the date of the shareholder vote, October 21, 2003, rather than the date the amendment to the articles of incorporation was accepted by the Secretary of State, February 11, 2004, triggered the application of the dissenting shareholders rights and the procedures for asserting those rights under N.D.C.C. ch. 10–19.1. According to the Hauglands, because N.D.C.C. § 10–19.1–24 provides the "articles of amendment are effective upon acceptance by the secretary of state or at another time within thirty days after acceptance if the articles of amendment so provide," Ramsey was not authorized to seek redemption of the shares of stock until the amendment to the articles was filed and accepted by the Secretary of State. Resolution of this issue

requires an examination of the statutes governing dissenting shareholders' rights.

[¶ 14] Our duty in construing statutes is to ascertain the legislature's intent, which initially must be sought from the statutory language itself, giving it its plain, ordinary, and commonly understood meaning. N.D.C.C. §§ 1–02–02 and 1–02–03. If statutory language is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit, because the legislature's intent is presumed clear from the face of the statute. N.D.C.C. § 1–02–05. If statutory language is ambiguous, a court may resort to extrinsic aids, including legislative history, to interpret the statute. N.D.C.C. § 1–02–39. A statute is ambiguous if it is susceptible to meanings that are different, but rational. *Van Klootwyk v. Baptist Home, Inc.,* 2003 ND 112, ¶ 12, 665 N.W.2d 679. Statutes must be construed as a whole and harmonized to give meaning to related provisions, and are interpreted in context to give meaning and effect to every word, phrase, and sentence. N.D.C.C. §§ 1–02–07 and 1–02–38(2). We construe statutes in a practical manner and give consideration to the context of the statutes and the purposes for which they were enacted. N.D.C.C. § 1–02–03.

[¶ 15] The Business Corporation Act provides significant protections for dissenting shareholders under N.D.C.C. §§ 10–19.1–87 and 10–19.1–88, which contain procedures for shareholders to obtain the fair value of their shares in a corporation. *Kaiser v. Kaiser,* 555 N.W.2d 585, 588 (N.D.1996). Under N.D.C.C. § 10–19.1–87(1)(a)(1), "[a] shareholder of a corporation may dissent from, and obtain payment for the fair value of the shareholder's shares in the event of, any of the following corporate actions: . . . an amendment of the articles that materially and adversely affects the rights or preferences of the shares of a dissenting shareholder in that it: . . . [a]lters or abolishes a preferential right of the shares." Under this plain language, the amendment of Ramsey's articles of incorporation to allow for the redemption of preferred shares gave the Hauglands dissenting shareholder rights under N.D.C.C. ch. 10–19.1.

[¶ 16] Section 10–19.1–88, N.D.C.C., details the procedural ladder for asserting dissenters' rights:

2. If a corporation calls a shareholder meeting at which any action described in subsection 1 of section 10–19.1–87 is to be voted upon, the notice of the meeting shall inform each shareholder of the right to dissent and shall include a copy of section 10–19.1–87 and this section.

3. If the proposed action must be approved by the shareholders, and the corporation calls a meeting of shareholders, then a shareholder who is entitled to dissent under section 10–19.1–87 and who wishes to exercise dissenter's rights shall file with the corporation before the vote on the proposed action a written notice of intent to demand the fair value of the shares owned by the shareholder and may not vote the shares in favor of the proposed action.

4. After the proposed action has been approved by the board and, if necessary, the shareholders, the corporation shall send to all shareholders who have complied with subsection 3, to all shareholders who did not sign or consent to a written action that gave effect to the action creating the right to obtain payment under section 10–19.1–87, and to all shareholders entitled to dissent if no shareholder vote was required, a notice that contains:

a. The address to which a demand for payment and share certificates must be sent in order to obtain payment and the date by which they must be received;

b. A form to be used to certify the date on which the shareholder, or the beneficial owner on whose behalf the shareholder dissents, acquired the shares or an interest in them and to demand payment; and

c. A copy of section 10–19.1–87 and this section.

5. In order to receive the fair value of shares, a dissenting shareholder must demand payment and deposit certificated shares within thirty days after the notice required by subsection 4 was given, but the dissenter retains all other rights of a shareholder until the proposed action takes effect.

[¶ 17] If a dissenting shareholder has complied with subsections 3, 4, and 5, the corporation must remit to the shareholder the amount the corporation estimates to be the fair value of the shares, plus interest, "[a]fter the corporate action takes effect, or after the corporation receives a valid demand for payment, whichever is later." N.D.C.C. § 10–19.1–88(6). If a dissenter has complied with subsections 3, 4, and 5, the corporation must forward materials and a statement of the reason for withholding the remittance, and an offer to pay to the dissenter the amount listed in the materials. N.D.C.C. § 10–19.1–88(7). The dissenter may decline the offer "and demand payment under subsection 9," but "[f]ailure to do so entitles the dissenter only to the amount offered. If the dissenter makes demand, subsections 10 and 11 apply." *Id.* A corporation must return all deposited certificates if it fails to remit within 60 days of the deposit of the certifi-

cates, but the corporation "may again give notice under subsections 4 and 5 and require deposit at a later time." N.D.C.C. § 10–19.1–88(8). Section 10–19.1–88(9) and (10), N.D.C.C., provide in relevant part:

9. If a dissenter believes that the amount remitted under subsections 6, 7, and 8 is less than the fair value of the shares plus interest, the dissenter may give written notice to the corporation of the dissenter's own estimate of the fair value of the shares plus interest, within thirty days after the corporation mails the remittance under subsections 6, 7, and 8, and demand payment of the difference. Otherwise, a dissenter is entitled only to the amount remitted by the corporation.

10. If the corporation receives a demand under subsection 9, it shall, within sixty days after receiving the demand, either pay to the dissenter the amount demanded or agreed to by the dissenter after a discussion with the corporation or file in court a petition requesting that the court determine the fair value of the shares plus interest.

[¶ 18] The Hauglands' argument that Ramsey was not authorized to seek redemption of the preferred shares until the amendment to the articles of incorporation was accepted by the Secretary of State ignores the plain language of the statute. The progressive ladder of procedures for asserting dissenters' rights can begin before an amendment becomes effective under N.D.C.C. § 10–19.1–24. Under N.D.C.C. § 10–19.1–88(4) (emphasis added), the corporation must send notice to all shareholders who complied with subsection 3 "[a]fter the proposed action has been *approved* by the board and, if necessary, the shareholders." A proposed amend-

ment to the articles is "adopted ... when approved by the affirmative vote of the shareholders." N.D.C.C. § 10–19.1–19(4)(a). Subsections 5 and 6 of N.D.C.C. § 10–19.1–88, relating to a dissenting shareholder's demand for payment, specifically refer to the effective date of the amendment, but recognize that the demand for payment may occur before the corporate action becomes effective. *See* N.D.C.C. § 10–19.1–88(5) (dissenting shareholder must demand payment and deposit certificated shares within 30 days after notice, "but the dissenter retains all other rights of a shareholder until the proposed action takes effect"); N.D.C.C. § 10–19.1–88(6) (corporation must remit payment to dissenting shareholders who have complied with the statutory requirements "[a]fter the corporate action takes effect, or after the corporation receives a valid demand for payment, whichever is later").

[¶ 19] There is nothing unusual about a statutory scheme that allows the process of redeeming shares to begin before an amendment to the articles of incorporation giving the corporation the power to do so has been formally filed and accepted by the Secretary of State. The purpose of a requirement that the articles of incorporation and their amendments be made a public record is to provide a means of furnishing information to those who deal with the corporation. *See, e.g., Ginsberg v. Lindel,* 107 F.2d 721, 728 (8th Cir.1939); *Higgins v. Hampshire Prods.,* 319 Mich. 674, 30 N.W.2d 390, 392 (1948); *Brennan v. Minneapolis Soc'y for the Blind, Inc.,* 282 N.W.2d 515, 522 (Minn.1979); 7A C. Jones, *Fletcher Cyclopedia of the Law of Private Corporations,* § 3722.10, at p. 420 (2006 Rev. ed.). Under N.D.C.C. §§ 10–19.1–87 and 10–19.1–88, notice is required to be given to all shareholders and they must be informed of their statutory right to dissent. The Hauglands were afforded

notice and had full knowledge of the proposed corporate action. They voted against the resolution at the October 21, 2003, meeting. In the context of corporate action involving shareholders with notice, delaying implementation of the procedures for exercising dissenting shareholders' rights until an amendment to the articles of incorporation is filed and accepted by the Secretary of State would exalt form over substance.

[¶ 20] The Hauglands have not complied with the procedure for asserting dissenters' rights under N.D.C.C. § 10–19.1–88. Although the Hauglands contend their January 16, 2004, letter to the corporation constituted a valid demand for payment, that communication cannot be fairly characterized as a demand for payment. The letter merely asserts that the corporation's actions were illegal. The Hauglands have never demanded payment or deposited their certificated shares with the corporation. Consequently, the Hauglands are not entitled to a court determination of the fair value of their shares plus interest, but are entitled "to the amount offered." N.D.C.C. § 10–19.1–88(7). The district court correctly concluded the Hauglands were entitled to $134.25 per share from Ramsey for their shares of preferred stock.

**B**

[¶ 21] The Hauglands contend the district court erred in concluding they had no other remedy against Ramsey other than accepting the fair value of their stock under the procedure outlined in N.D.C.C. §§ 10–19.1–87 and 10–19.1–88.

[¶ 22] Section 10–19.1–87(4), N.D.C.C., states:

4. The shareholders of a corporation who have a right under this section to obtain payment for their shares

do not have a right at law or in equity to have a corporate action described in subsection 1 set aside or rescinded, except when the corporate action is fraudulent with regard to the complaining shareholder or the corporation.

The legislature has declared "there is no common law in any case where the law is declared by the code." N.D.C.C. § 1–01–06. Section 10–19.1–87(4), N.D.C.C., clearly provides that dissenting shareholders whose preferred shares have been altered or abolished, and have a right to obtain payment for their shares, have no right to have the corporate action set aside or rescinded unless the corporate action is fraudulent. Absent fraud, this provision makes the statutory procedure for asserting dissenters' rights an exclusive remedy. *See Hearing on S.B. 2041, S.B. 2107, and S.B. 2251 Before the Senate Industry, Business and Labor Committee*, 49th N.D. Legis. Sess. (January 22, 1985) ("Analysis of Proposed North Dakota Business Corporation Act Revision") ("When the remedy is exclusive, it is imperative that people know they have it in time to exercise it," referring to the notice requirement in N.D.C.C. § 10–19.1–88). Although the Hauglands alleged in their answer and counterclaim that Ramsey acted fraudulently, they do not argue on appeal that they raised a genuine issue of material fact to preclude summary judgment dismissal of this claim. We conclude the district court did not err in ruling the Hauglands had no other remedy available to them to receive the fair value of their preferred shares.

### C

[¶ 23] The Hauglands argue that the retroactive application of N.D.C.C. ch. 10–19.1 to their preferred shares of stock, which they obtained before the revised Business Corporation Act was enacted in 1985, violates N.D. Const. art. I, § 18, which provides: "No bill of attainder, ex post facto law, or law impairing the obligations of contracts shall ever be passed." Although the Hauglands cited to the constitutional provision, they have given us no supporting authority or analysis. This is insufficient to raise the constitutional issue for our review. *See, e.g., North Dakota Guaranteed Student Loan Program v. Voigt*, 513 N.W.2d 64, 66 (N.D.1994).

### IV

[¶ 24] We have considered the other issues raised and deem them to be either without merit or unnecessary to address in view of our disposition of this case. We dismiss the Dammens' appeal and affirm the summary judgment.

[¶ 25] GERALD W. VANDE WALLE, C.J., BENNY A. GRAFF, S.J., WADE L. WEBB, D.J., and DALE V. SANDSTROM, J., concur.

[¶ 26] The Honorable Benny A. Graff, S.J., and the Honorable Wade L. Webb, D.J., sitting in place of Maring, J., and Crothers, J., disqualified.