STATE OF NEBRASKA, APPELLEE, v. CHOICE JACKSON, APPELLANT.

155 N. W. 2d 361

Filed January 5, 1968. No. 36693.

Choice, Jackson pro se.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

NEWTON, J.

This is a post conviction hearing.

On October 7, 1959, information was filed in Douglas County, Nebraska, charging that defendant on October 3, 1959, committed the offense of murder in the second degree. On October 9, 1959, defendant entered a plea of guilty to the charge contained in the information and on October 28, 1959, was sentenced to life imprisonment. He was represented by a member of the staff of the public defender. The case is now before us on defendant's motion to vacate his conviction and sentence. The district court granted an evidentiary hearing on the motion and appointed counsel to represent the defendant in connection therewith. Defendant's deposition was taken and received in evidence; witnesses called were the assistant public defender who had represented the defendant at the time of his conviction, and James L. Koley, a deputy county attorney who had been in charge of the prosecution.

At the conclusion of the hearing, the matter was

taken under advisement by the court and, subsequently, an order was entered overruling the defendant's motion. The order is quite lengthy, setting out the pertinent evidence on the various points involved and the law pertaining thereto in great detail and reflects a very conscientious attempt by the court to properly resolve the questions presented.

The defendant assigns error in regard to several factual conclusions arrived at by the trial court and insists that his constitutional rights were violated. His first contention is that his plea of guilty was not a voluntary plea but was coerced by promises of leniency. He intimates that the deputy county attorney told him that if he were convicted of first degree murder, due to his past record, he might be sentenced to the electric chair, but that on conviction of second degree murder, he would get a life sentence. He admits that he knew before he was so informed of the difference in the sentences provided by law for first and second degree murder. In connection with his contention that he was promised a life sentence rather than the electric chair if he would plead guilty to second degree murder, the following evidence given by him would appear to be conclusive: "Q- Did he say anything about if you would plead guilty to second degree murder that he would see that you would get life? A- He didn't say. * * * Q- And then did he tell you that if you pleaded guilty to second degree murder that you'd get a life sentence? A- Well, I don't remember what he said about getting a life sentence, but I do know that he told me it would be best to plead to second degree, but at the time I don't remember him saying anything about that, * * *." He further testified: "Q- Now Mr. Koley explained to you if you were found guilty of first degree murder that there was a chance that you might lose your life, is that right? A- Yes. Q- And he said if you were found guilty of second degree murder or if you were found guilty that you would be given life imprisonment? A- Yes. Q-

And you knew that at the time? A- Yes."

The foregoing testimony of the defendant indicates that he was not promised a life sentence rather than the electric chair if he would plead guilty to second degree murder. It further indicates that he already knew before the deputy county attorney so informed him that on a first degree murder charge it was possible on conviction to be sentenced to the electric chair, but that this could not be done on a conviction for second degree murder. The deputy county attorney specifically denied advising Jackson that if he pleaded guilty to second degree murder that he would receive a life sentence, but if he did not so plead, he would be convicted of first degree murder and would be executed. The foregoing evidence makes it clear that not only was there sufficient evidence to sustain the finding of the trial court that defendant's plea of guilty was not coerced by promises that he would receive a life sentence, but that a finding to the contrary could not be sustained on the record.

Defendant's second contention is that he was denied the right to retain an attorney of his own choosing. The record reflects the statement by the defendant to the effect that he wanted to contact friends and so informed the jailer; and that his purpose in wishing to contact his friends was to have them get him a lawyer. Yet, he admits that he at no time requested the assistant public defender, the deputy county attorney, or the court for permission to employ counsel of his own choosing and the attorney from the public defender's office, who represented defendant, testified that he questioned defendant about his ability to employ counsel of his own choosing and ascertained that defendant could not do so. The record thus sustains the finding of the trial court in connection with defendant's second assignment of error.

Third, the defendant contends that he was denied the right to effective counsel because he was not given the opportunity to confer with his court-appointed counsel and such counsel had no opportunity to investigate or

ascertain the facts of the case. Defendant testified that the first time he saw the attorney from the public defender's office who represented him was when he was taken into the courtroom, arraigned, and entered a plea of guilty and that the only other time he saw his attorney was at the time he was sentenced. These statements are directly contradicted by the evidence of the assistant public defender who stated that he consulted with the defendant on 6, 8, or 10 different occasions; that he had access to a list of the State's witnesses, and to the deputy county attorney's file in defendant's case; and that he examined this file and familiarized himself with all the evidence which the deputy county attorney proposed to use against the defendant. This testimony of the assistant public defender is verified by that of the deputy county attorney who prosecuted the case. It would appear that the assistant public defender permitted the defendant to plead guilty only after he had familiarized himself with the facts of the case and arrived at the conclusion that this was best for the defendant, particularly in view of the fact that defendant had previously been convicted on several occasions in the past and at least one such conviction had been for homicide. There is no merit to defendant's third contention.

Defendant further contends that he was subjected to pretrial questioning in violation of rules set out in Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, and Miranda v. Arizona, 384 S. Ct. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A. L. R. 3d 974. The record does not reflect the nature of any statements which may have been elicited from the defendant in this manner, but certainly such statements were not used against him. The rules referred to cannot be of assistance to the defendant. They were rules for the exclusion of evidence wrongfully obtained and no such evidence was made use of in this case. See State v. Silvacarvalho, 180 Neb. 755, 145 N. W. 2d 447. In any event, the rules laid down in the cases mentioned are not retroactive.

See Johnson v. New Jersey, 384 U. S. 719, 86 S. Ct. 1772, 16 L. Ed. 2d 882.

Defendant's last contention is that the trial court erred in not appointing counsel to represent him on this appeal. The record indicates that after the evidentiary hearing in the trial court, defendant's court-appointed attorney asked leave to withdraw from the case because both he and the public defender had arrived at the conclusion that defendant had no valid grounds upon which he could expect relief in the event of an appeal to this court and that such appeal would be frivolous in nature. The trial court permitted counsel to withdraw, subject to his first completing defendant's appeal to this court, and in view of the circumstances did not appoint other counsel. Under the Post Conviction Act, it is within the discretion of the district court as to whether or not legal counsel shall be appointed to represent a defendant on appeal to this court and, in the absence of a showing of an abuse of discretion, the failure to appoint counsel is not error. See State v. Hizel, 181 Neb. 680, 150 N. W. 2d 217. No abuse of discretion appears.

No error appearing, the judgment of the district court must be affirmed.

AFFIRMED.