2013 ND 159

FOUR SEASON'S HEALTHCARE CENTER, INC., Plaintiff and Appellee

v.

Elden LINDERKAMP and Rita Linderkamp, Defendants, Third–Party Plaintiffs and Appellants

v.

Louis Linderkamp, Carl Linderkamp, Gene Linderkamp, Dennis Linderkamp and Dawn Herrmann, Third–Party Defendants.

Dennis Linderkamp, as Personal Representative of the Estates of Earl Linderkamp and Ruth Linderkamp, deceased, Plaintiffs and Appellees

v.

Elden Linderkamp and Rita Linderkamp, Defendants and Appellants.

Nos. 20120432, 20120433.

Supreme Court of North Dakota.

Sept. 4, 2013.

Roger J. Minch, Fargo, N.D., for plaintiff and appellee Four Season's Healthcare Center, Inc.

David A. Tschider, Bismarck, N.D., for plaintiffs and appellees Dennis Linderkamp, as Personal Representative of the Estates of Earl Linderkamp and Ruth Linderkamp, deceased.

Tracey R. Lindberg, Breckenridge, MN, for defendants, third-party plaintiffs and appellants Elden Linderkamp and Rita Linderkamp.

KAPSNER, Justice.

[¶1] Elden and Rita Linderkamp appeal from a judgment requiring Elden Linderkamp to pay Four Season's Healthcare Center, Inc., $104,276.62 for nursing home care provided to his parents, invalidating a contract for deed and warranty deed conveying land from the parents to Elden and Rita Linderkamp, authorizing the parents' personal representative to administer the land in the probate of the parents' estates, and allowing Elden and Rita Linderkamp a net claim of $45,000 against the parents' estates. We hold the district court did not clearly err in finding there was no credible evidence of a claimed oral agreement for Earl Linderkamp to compensate Elden Linderkamp for improvements to the land as part of the consideration for the contract for deed and warranty deed and did not clearly err in finding there was no credible evidence to support Elden Linderkamp's claim he made more than $100,000 in improvements to the land as part of the consideration for the deeds. We further conclude the district court erred in declining to rule on an issue about all of the children's liability for their parents' nursing home debt under N.D.C.C. § 14–09–10. We affirm in part, reverse in part, and remand for further proceedings.

I

[¶2] Earl and Ruth Linderkamp were the parents of Dawn Herrmann and El-

den, Louis, Carl, Gene, and Dennis Linderkamp. Earl and Ruth Linderkamp owned a quarter section of land in Sargent County, which they farmed until 1975 when they moved to a residence in Lisbon. They thereafter leased the land and buildings to Elden and Dennis Linderkamp, who farmed the land under an oral partnership agreement. Elden and Dennis Linderkamp both lived on the farm until 1983, when Dennis Linderkamp vacated the premises after Elden Linderkamp married Rita Linderkamp and they resided together on the farm. Dennis Linderkamp continued farming with Elden Linderkamp under the oral partnership arrangement until 1993, when disagreements resulted in a dissolution of the partnership. Thereafter, Elden Linderkamp continued farming the land under a lease agreement with his parents.

[¶ 3] According to Elden Linderkamp, in 1977 he asked Earl Linderkamp about purchasing the property, but his father would not sell the property to him at that time. Elden Linderkamp claimed, however, he entered into an oral agreement with his father in 1977 for reimbursement of his costs and expenses for improvements to the property as consideration for the purchase price when he ultimately bought the property from his parents. Elden Linderkamp specifically testified the agreement was that he "would put up the price of the materials and the labor and that when we got around to selling the land, if I didn't get to buy it, [his father] would have to take and pay me outright." Elden Linderkamp claimed he spent between $120,000 and $130,000 for improvements to the property, including repairing the house and other buildings, erecting structures for a pig operation, removing outdated buildings, landscaping, and replacing a water supply system.

[¶ 4] Elden Linderkamp claimed Earl Linderkamp approached him in February 2006 about selling the property, and Elden Linderkamp made a handwritten offer of $50,000 in addition to the costs of the improvements to the property under the prior oral agreement. In August 2006, Earl, Ruth, Elden, and Rita Linderkamp went to the office of attorney Wayne Jones, where Earl and Ruth Linderkamp executed a contract for deed conveying the property to Elden and Rita Linderkamp for a stated purchase price of $50,000. Elden Linderkamp testified his handwritten offer of $50,000 and other consideration already paid was given to Jones, and Jones testified Elden Linderkamp's handwritten offer was part of an office file with the contract for deed. Elden Linderkamp testified his parents were aware of what they were doing when they executed the contract for deed, his father was aware of the costs of Elden Linderkamp's improvements to the property, and his parents had no plans for entering a nursing home and had considered renting an apartment in Cogswell in September 2006. A February 2009 appraisal reflected a market value of $152,000 for the land in August 2006. The parents' financial records indicated that in August 2006, they had more than $7,000 in their checking account and more than $83,000 in other accounts, plus social security benefits and the money from the sale of the land.

[¶ 5] In October 2006, Earl and Ruth Linderkamp were hospitalized and Four Season's began providing them nursing home care after their doctor required discharge to a nursing home.

[¶ 6] In November 2006, Elden and Rita Linderkamp took Earl and Ruth Linderkamp from the nursing home to the office of attorney Earl Anderson, where the parents executed a warranty deed conveying the land to Elden and Rita Linder-

kamp. The warranty deed was prepared by Anderson and stated the "full consideration" for the property was $50,000. Anderson testified that Elden Linderkamp told him about the terms of the conveyance, including the prior oral agreement to compensate Elden Linderkamp for improvements to the property, and that Earl Linderkamp reiterated those terms outside the presence of Elden Linderkamp.

[¶ 7] The parents lived in Four Season's nursing home until Ruth Linderkamp died in December 2009, and Earl Linderkamp died in September 2010. After their deaths, Four Season's sued Elden and Rita Linderkamp to set aside the land transfer as a fraudulent conveyance under N.D.C.C. ch. 13–02.1 and to recover more than $93,000 in unpaid nursing home care provided to the parents. Elden and Rita Linderkamp brought a third-party claim against Elden Linderkamp's siblings for contribution for the unpaid nursing home care provided to the parents. The parents' personal representative thereafter sued Elden and Rita Linderkamp, claiming the parents lacked capacity to execute the contract for deed and the warranty deed. The district court entered partial summary judgment on Four Season's claim for the unpaid nursing home care provided to the parents, concluding Elden Linderkamp was liable for his parents' unpaid nursing home care under N.D.C.C. § 14–09–10. The court reserved for trial the other children's liability for their parents' nursing home debt under that statute.

[¶ 8] The actions were thereafter consolidated for trial and, after a bench trial, the district court concluded the conveyance from Earl and Ruth Linderkamp to Elden and Rita Linderkamp was a void fraudulent transfer under N.D.C.C. ch. 13–02.1, because the parents did not receive reasonably equivalent value in exchange for the property and the conveyance was made when the parents were about to incur debt that was clearly beyond their ability to pay. The court said the parol evidence rule and the statute of frauds barred evidence about an oral agreement for improvements to the land dating back to the 1970s as part consideration for the purchase price for the property, and even if that evidence was not barred, there was no credible evidence of an oral agreement between Earl and Elden Linderkamp, or credible evidence that Elden Linderkamp's improvements to the property were valued at more than $100,000. The court said that although there was evidence Earl Linderkamp was declining mentally, the evidence regarding Ruth Linderkamp's lack of capacity at the time of, and prior to, the contract for deed and warranty deed was compelling. The court found she was suffering from seriously debilitating dementia when she signed the contract for deed and warranty deed and her incapacity rendered the transfer void. The court ruled the parties' other claims were moot. The court's judgment required Elden Linderkamp to pay Four Season's $104,276.62 for his parents' unpaid nursing home care, invalidated the contract for deed and the warranty deed for the land, authorized the personal representative of the parents' estates to administer the land in the probate of the estates, and allowed Elden and Rita Linderkamp a net claim of $45,000 against the parents' estates.

II

[¶ 9] Elden and Rita Linderkamp argue the district court erred in deciding the land transfer was a fraudulent conveyance under N.D.C.C. § 13–02.1–04(1), which provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor

made the transfer or incurred the obligation:

a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or

b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or the debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

[¶ 10] Elden and Rita Linderkamp argue the parents' increased nursing home expenses were not imminent and the parents had sufficient resources and were able to pay their anticipated expenses and debts when the conveyance was made. Elden and Rita Linderkamp also argue the parents received a reasonably equivalent value in exchange for the property in view of the $120,000 to $130,000 the parents owed Elden Linderkamp for improvements to the land, which Elden and Rita Linderkamp claim was part of the prior oral agreement between Elden and Earl Linderkamp and was satisfied through the conveyance. Elden and Rita Linderkamp argue the court erred in deciding there was no credible evidence of an oral agreement between Elden and Earl Linderkamp and the court erred in refusing to consider evidence of the oral agreement under the statute of frauds and the parol evidence rule.

[2] [¶ 11] "The statute of frauds provides that an agreement for the sale of real property is 'invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent.'" *Fladeland v. Gudbranson,* 2004 ND 118, ¶ 8, 681 N.W.2d 431 (quoting *Kuntz v. Kuntz,* 1999 ND 114, ¶ 10, 595 N.W.2d 292). *See* N.D.C.C. § 9-06-04. This Court has recognized the statute of frauds for the sale of real property does not apply where the party to be charged consummated the sale by a contract for deed executed, acknowledged, and delivered to the purchaser. *See Baldus v. Mattern,* 93 N.W.2d 144, 151 (N.D.1958). Here, the alleged oral agreement involved the consideration for the sale of land, which was memorialized by the contract for deed and the warranty deed. The deeds are writings satisfying the statute of frauds, and the issue involves the application of the parol evidence rule to the deeds and the claimed prior oral agreement.

[¶ 12] Under the statutory formulation of the substantive parol evidence rule in N.D.C.C. § 9-06-07, "[t]he execution of a contract in writing, whether the law requires it be written or not, supercedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." *See Gajewski v. Bratcher,* 221 N.W.2d 614, 625-26 (N.D.1974). A deed is a written contract subject to the parol evidence rule. *Zimmer v. Bellon,* 153 N.W.2d 757, 761 (N.D.1967). In *Zimmer,* at 761, this Court said:

"As a general rule * * * a deed made in full execution of a contract of sale of land merges the provisions of the contract therein, and this rule extends to and includes all prior negotiations and agreements leading up to the execution of the deed, all prior proposals and stipulations, and oral agreements, including promises made contemporaneously with the execution of the deed. * * * Accordingly, although the terms of prelimi-

nary agreements may vary from those contained in the deed, *the deed alone, must be looked to for determination of the rights of the parties, in the absence of fraud or mistake, * * *.*" (Emphasis supplied.) 26 C.J.S. *Deeds,* § 91c, p. 842.

■ [¶ 13] Parol evidence, however, may be considered to prove that the actual consideration for a land transfer differs from that recited in the deed, but that exception does not permit a party to show the agreement was different than that set forth in the writing. *Johnson Farms v. McEnroe,* 1997 ND 179, ¶ 22, 568 N.W.2d 920; *Zimmer,* 153 N.W.2d at 762; *Clark v. Henderson,* 62 N.D. 503, 508–09, 244 N.W. 314, 315 (1931); *Erickson v. Wiper,* 33 N.D. 193, 206–08, 157 N.W. 592, 596–97 (1916). In *Erickson,* 33 N.D. at 206–07, 157 N.W. at 596–97, this Court explained:

The rule is also well settled that the acknowledgment of the receipt of a consideration in a deed or other written contract is not conclusive, but it may be shown by parol that the consideration agreed upon has not been paid; or that a consideration greater or lesser than, or different from, that expressed in the deed was in fact agreed upon.

"In an action for the consideration money expressed in a deed for lands sold, the clause acknowledging the receipt of a certain sum of money as the consideration of the conveyance or transfer is open to explanation by parol proof. The only effect of this consideration clause in a deed is to estop the grantor from alleging that the deed was executed without consideration. For every other purpose it is open to explanation, and may be varied by parol proof. Parol evidence is also admissible to show an additional consideration not inconsistent with the

deed." Devlin on Deeds (3d Ed.) § 823.

. . . .

"It is held by an uncounted multitude of authorities that the true consideration of a deed of conveyance may always be inquired into, and shown by parol evidence, for the obvious reason that a change in or contradiction of the expressed consideration does not affect in any manner the convenants of the grantor or grantee, and neither enlarges nor limits the grant." 17 Cyc. 653.

■ [¶ 14] The decision to admit parol evidence is a determination of law, fully reviewable on appeal. *First Nat'l Bank v. Burich,* 367 N.W.2d 148, 152 (N.D.1985). Under N.D.C.C. § 13–02.1–03, value is given for purposes of assessing a fraudulent transfer when an antecedent debt is satisfied. Here, the alleged oral agreement relates to the amount of consideration for the conveyance of the property, including the claimed prior oral agreement for reimbursement for the improvements to the property. We conclude the district court erred to the extent the court said evidence of the alleged oral agreement between Elden and Earl Linderkamp was barred by the parol evidence rule.

[¶ 15] At trial, however, the district court did not exclude any proffered evidence about the alleged oral agreement. Rather, the court admitted all the evidence offered by Elden and Rita Linderkamp about the alleged oral agreement and improvements to the property and that evidence was before the court. The court's memorandum opinion which may be considered to explain or clarify findings of fact, *Edward H. Schwartz Constr., Inc. v. Driessen,* 2006 ND 15, ¶ 11, 709 N.W.2d 733, explains:

Further, even if the Parole Evidence Rule . . . did not apply, there is no credi-

ble evidence of any oral agreement or understanding between Earl and Elden Linderkamp. Nor is there any credible evidence to support Elden Linderkamp's assertion that he improved the property by in excess of $100,000 while he resided there. This court does not find the testimony of Elden or Rita Linderkamp credible. This court does believe the testimony of Dennis Linderkamp in particular and the remaining siblings as well.

The court's subsequent findings of fact provide:

12. The Court does not find from the evidence presented by Elden and Rita Linderkamp that the stated full consideration of $50,000 together with the so-called "improvements" Elden and Rita Linderkamp made to the Real Property, whether painting buildings, conducting a hog operation, or doing other things, provided reasonably equivalent value for the transfer of the Real Property.

13. The Contract for Deed and the Warranty Deed conveying the Real Property are void because the grantors, Earl and Ruth Linderkamp, did not receive reasonably equivalent value in exchange for the Real Property, and Earl and Ruth were about to incur a debt which was clearly beyond their ability to pay.

14. Elden and Rita had contended that, in addition to the consideration of $50,000.00 stated in the Contract for Deed and Warranty Deed, other consideration for the purchase was provided by Elden and Rita in the form of improvements to the Real Property, which improvements were affected while Elden and Rita Linderkamp lived on the Real Property, and in the form of other oral agreements and understandings not made part of the Contract for Deed or the Warranty Deed, or otherwise re-corded or reduced to writing. Testimony and evidence relating to consideration other than the $50,000.00 recited in the Contract for Deed and the Warranty Deed and other testimony regarding alleged oral agreements or oral understandings between Earl and Ruth and Elden, although received by the Court, is barred by the parole evidence rule and the statute of frauds.

15. Even if the parole evidence rule and statute of frauds did not apply, the Court finds that there is no credible evidence to support Elden's assertion that Elden and Rita improved the Real Property as part of the consideration for the transfer of the Real Property or that there were other oral agreements or understandings between Elden and Earl that would have, in addition to the stated consideration of $50,000.00, provided reasonably equivalent value for the transfer of the Real Property.

[¶ 16] In an appeal from a bench trial, a district court's findings of fact are reviewed under the clearly erroneous standard of N.D.R.Civ.P. 52(a). *Fargo Foods, Inc. v. Bernabucci*, 1999 ND 120, ¶ 10, 596 N.W.2d 38. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. *Moen v. Thomas*, 2001 ND 95, ¶ 19, 627 N.W.2d 146. In a bench trial, the district court determines credibility issues and we do not second-guess those credibility determinations. *Id.* at ¶ 20. Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess the credibility of witnesses, and we will not retry a case or substitute our judgment for a district court's decision merely because we may have reached a different result. *Dvorak v. Dvorak*, 2006 ND 171, ¶ 11, 719

N.W.2d 362. A choice between two permissible views of the weight of the evidence is not clearly erroneous under that deferential standard of review. *Id.*

[¶ 17] Here, there was evidence presented to the district court from which it could find there was no credible evidence to support Elden and Rita Linderkamp's claims of an oral agreement to improve the property in addition to the stated consideration of $50,000. Dennis Linderkamp testified he participated in a farming partnership on the land with Elden Linderkamp from 1975 through 1993. Dennis Linderkamp testified he was not aware of an agreement for reimbursement for improvements to the property, and he testified that except for buildings erected for a pig operation there were "not really" other improvements to any of the other buildings. Dennis Linderkamp testified Elden Linderkamp quit raising pigs in about 1990. Elden Linderkamp's other siblings all testified they were not aware of any agreement to compensate him for improvements to the property. Dennis Linderkamp also testified that Earl Linderkamp asked him to purchase the land in the early 2000s and he refused.

[¶ 18] The court also heard testimony and received evidence relating to the claimed prior oral agreement, including a handwritten note by Elden Linderkamp in the file of attorney Wayne Jones, the attorney who prepared the contract for deed, which Elden Linderkamp testified was prepared in 2006 and said the purchase price for the property was "50,000$ and other considerations all ready [sic] paid for." Jones testified he did not independently remember the transaction, but he used a standard procedure for elderly clients, including a discussion with them about the nature of the transaction to ensure they understood what they were doing. Jones testified that if he had any concern about competency, he placed a detailed memorandum in the file and there was no memorandum in the file for the contract for deed. Jones further testified Elden Linderkamp's handwritten note was part of the file for the contract for deed.

[¶ 19] Elden Linderkamp testified that in November 2006, he and Rita Linderkamp took Earl and Ruth Linderkamp from the nursing home to the office of attorney Earl Anderson, where the parents executed the warranty deed. Anderson testified he drafted the warranty deed for his clients, Elden and Rita Linderkamp. Anderson also testified he inquired about the purchase price of $50,000 and was informed by Elden Linderkamp that the deal for the sale of the land had been made back in the 1970s. Anderson testified that Elden Linderkamp told him that Elden and Rita Linderkamp had made "substantial investments in the real estate in the form of grain bins and other buildings that they had constructed and other improvements that they had made on the property over the years." Anderson testified Earl Linderkamp reiterated the terms of the deal outside the presence of Elden Linderkamp and "[i]t was [Anderson's] understanding that the improvements that Elden made to the land were in reliance on the agreement that he had previously made with Elden and Ruth [sic] that he would be purchasing this property."

[¶ 20] Although the district court found Anderson's testimony about his observations of Ruth Linderkamp's mental capacity was truthful, the underlying circumstances of Anderson's meeting with Earl and Ruth Linderkamp do not, as a matter of law, require a finding of a prior oral agreement between Elden and Earl Linderkamp, especially in view of the court's explicit finding that Dennis Linderkamp and the remaining siblings were credible,

while Elden and Rita Linderkamp were not credible. There was conflicting evidence from which the district court could have found there was no credible evidence that any improvements to the property were part of an oral agreement for additional consideration for the purchase of the property and could have found there was no credible evidence Elden Linderkamp made more than $100,000 in improvements to the property. Under our deferential standard of review of the district court's findings, we do not reweigh the evidence. We are not left with a definite and firm conviction the court made a mistake in finding the parents did not receive a reasonably equivalent value in exchange for the transfer and we conclude the court's findings on that issue are not clearly erroneous.

[¶ 21] There was also conflicting evidence about the parents' health conditions in 2006. Dennis Linderkamp testified that in 2006, he and his wife were very concerned that his parents were not going to be living independently much longer, but that they could handle an apartment for a while. Dennis Linderkamp also testified there may not have been specific discussions about his parents entering a nursing home, but he acknowledged his parents' conditions indicated nursing home care would be warranted in the future. There was also evidence about both elderly parents' declining mental conditions. The court found Earl Linderkamp was declining mentally and Ruth Linderkamp was suffering from seriously debilitating dementia. The court also found that due to the parents' declining mental capacities, their children had considered the eventual necessity of the parents moving into an assisted living or nursing home facility. Evidence in the record supports that finding, and we are not left with a definite and firm conviction the district court made a

mistake in finding the conveyance was made when the parents were about to incur debt that was clearly beyond their ability to pay. We conclude the district court did not clearly err in finding the conveyance was made when there was a reasonable belief the parents would be entering a nursing home and would not be able to fully pay for their long-term care. We conclude the court did not clearly err in finding a fraudulent transfer under N.D.C.C. § 13–02.1–04.

[¶ 22] Elden and Rita Linderkamp nevertheless argue the district court erred in voiding the entire conveyance under N.D.C.C. § 13–02.1–07(1)(a), which describes a creditor's remedies for a fraudulent transfer and says "a creditor . . . may obtain [a]voidance of the transfer . . . to the extent necessary to satisfy the creditor's claim." They argue avoidance of the entire conveyance was erroneous under that statute.

[¶ 23] Section 13–02.1–07(1)(c), N.D.C.C., describes other remedies available to a creditor and provides a creditor may obtain "any other relief the circumstances may require." Here, Four Season's action claiming a fraudulent transfer was consolidated for trial with the parents' estates' action to rescind the conveyance, or for an accounting and monetary damages equal to the difference between the actual value of the property in 2006 and the amount paid by Elden and Rita Linderkamp. In the context of the consolidated actions, the district court awarded Four Season's a judgment against Elden Linderkamp for $104,276.62, voided the contract for deed and warranty deed, authorized the parents' estates to administer the property, allowed the parents' estates a $5,000 claim against Elden and Rita Linderkamp for unpaid 2006 rent for the property, and granted Elden and Rita Linderkamp a $50,000 claim against the par-

ents' estates for a refund of the purchase price for the property, which resulted in a net claim for Elden and Rita Linderkamp of $45,000 against the parents' estates. Under these circumstances, we hold the district court's decision to void the entire transfer and to order the property returned to the parents' estates for probate was permitted under the language of N.D.C.C. § 13–02.1–07(1)(c) authorizing any other relief the circumstances may require.

[¶ 24] Elden and Rita Linderkamp argue the district court erred in imposing personal liability against Elden Linderkamp for his parents' unpaid nursing home debt and deciding the similar claims against his siblings were moot under N.D.C.C. § 14–09–10, which provides:

> It is the duty of the father, the mother, and every child of any person who is unable to support oneself, to maintain that person to the extent of the ability of each. This liability may be enforced by any person furnishing necessaries to the person. The promise of an adult child to pay for necessaries furnished to the child's parent is binding.

[¶ 25] This Court has recognized that "a child is liable to a third party for actual necessaries furnished to the child's parent, regardless of whether or not the child has been notified of, or agreed to pay for, the services rendered." *Trinity Med. Ctr., Inc. v. Rubbelke*, 389 N.W.2d 805, 807 (N.D.1986). *See Bismarck Hosp. and Deaconesses Home v. Harris*, 68 N.D. 374, 378–82, 280 N.W. 423, 425–27 (1938). In *Rubbelke*, at 807, this Court explained liability established by N.D.C.C. § 14–09–10 was secondary liability imposed on children because of their relationship to their parents and was akin to the liability of a guarantor. The language of N.D.C.C. § 14–09–10 imposes a duty on children of parents who are unable to support them-

selves to maintain their parents to the extent of the ability of each child, which may be enforced by any person furnishing necessaries to the parents.

[¶ 26] In granting partial summary judgment before trial, the district court decided Elden Linderkamp was personally liable for his parents' nursing home debt under N.D.C.C. § 14–09–10, and reserved for trial the issue of the other children's potential liability under that statute. At trial, there was evidence presented to the court about the financial abilities of each of the children of Earl and Ruth Linderkamp to pay for their care, but the court said its determination on the issues about the parents' capacity and the fraudulent conveyance rendered the parties' other claims and issues moot.

[¶ 27] This Court has said "[a] case is moot when a determination is sought which, when rendered, cannot have any practical legal effect upon a then-existing controversy." *Varnson v. Satran*, 368 N.W.2d 533, 535 (N.D.1985). We conclude the district court erred in holding Elden Linderkamp personally liable in the amount of $104,276.62 for his parents' unpaid nursing home debt without deciding the other children's potential liability under that statute. Although the parents' unpaid nursing home debt may be paid from a probate claim that adjusts all the parties' interests in the context of probate proceedings for the parents' estates, we decline to speculate on that possibility. The application of N.D.C.C. § 14–09–10 to all the children may have some effect upon the debt and has not necessarily been rendered moot by the district court's decision on other issues. We therefore reverse the judgment to the extent the court held Elden Linderkamp personally liable for his parents' nursing home debt, and we re-

mand for further proceedings on that issue.

### III

[¶ 28] The resolution of the foregoing issues is dispositive of the appeal, and we need not address any other issues raised by the parties. We affirm in part, reverse in part, and remand for further proceedings.

[¶ 29] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.