2014 ND 97

STATE of North Dakota ex rel. Bonnie L. STORBAKKEN, Commissioner of Labor, for the benefit of Patrick Anderson, Adam Barton, Greg Boumont, Jason Richter, Michael Rick, Rick Schake, and Zach Scheeley, Plaintiff and Appellee

v.

SCOTT'S ELECTRIC, INC., Defendant and Appellant.

No. 20130264.

Supreme Court of North Dakota.

May 12, 2014.

Douglas B. Anderson, Office of Attorney General, Bismarck, N.D, for plaintiff and appellee.

Leslie B. Oliver (argued) and Robert J. Pathroff (appeared), Bismarck, N.D, for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Scott's Electric, Inc., appeals from a judgment awarding the State, for the benefit of seven employees of Scott's, $149,551.03 in unpaid wages, penalties and interest relating to uncompensated travel time. We affirm, concluding the district court's findings of fact are not clearly erroneous and the court did not missapply those facts to the controlling law.

I

[¶ 2] Scott's is an electrical contracting business that provides commercial, residential, industrial and farm services within a 250-mile radius of its home base in Wahpeton. During the relevant period, Scott's had between three to five large commercial jobs, two to three small commercial projects and one to two underground utility jobs ongoing at the same time. Scott's maintained a fleet of company-owned vehicles that provided transport for employees and equipment from the home base to various jobsites.

[¶ 3] Scott's employed Patrick Anderson, Adam Barton, Greg Boumont, Jason Richter, Michael Rick, Rick Schake, and Zach Scheeley as journeymen or apprentice electricians. In 2008, they filed claims with the North Dakota Department of Labor seeking unpaid wages from Scott's for travel time while driving company-owned vehicles. Their claims for unpaid wages spanned from April 1991 to March 2008. After investigating the claims, the Department notified Scott's of the wage claim determinations and re-

quested payment of wages the Department determined to be valid and enforceable.

[¶ 4] After unsuccessful efforts to collect the unpaid wages, the Department took assignments in trust for wages from the claimants and brought this action against Scott's under N.D.C.C. ch. 34–14 to collect the unpaid wages, penalties and interest. After a bench trial, the district court ruled in favor of the Department and awarded a judgment for unpaid wages, penalties and interest against Scott's for $149,551.03.

## II

■ [¶ 5] After filing its notice of appeal, Scott's offered to pay the State an amount for "Undisputed Wages, Penalties and Interest (8/27/2013)." Scott's did so and a "Partial Satisfaction of Judgment for Undisputed Wages, Interest, and Statutory Penalties" for $48,236.44 was entered on December 23, 2013. On appeal, Scott's seeks reversal of the judgment and requests this Court to "render a take-nothing judgment in favor of Scott's." The State contends the request for a "take-nothing judgment" is barred to the extent of its post-judgment payment of "undisputed" wages, penalties and interest. Scott's did not respond to the State's argument in its reply brief and continues to request this Court to "render a take-nothing judgment" in its favor.

[¶ 6] This Court follows the rule that "a party who voluntarily pays a judgment against him waives the right to appeal from the judgment." *Ramsey Fin. Corp. v. Haugland*, 2006 ND 167, ¶ 9, 719 N.W.2d 346; *see also Mr. G's Turtle Mountain Lodge, Inc. v. Roland Twp.*, 2002 ND 140, ¶ 11, 651 N.W.2d 625; *DeCoteau v. Nodak Mut. Ins. Co.*, 2001 ND 182, ¶ 10, 636 N.W.2d 432; *Twogood v. Wentz*, 2001 ND 167, ¶ 5, 634 N.W.2d 514; *Lyon v. Ford Motor Co.*, 2000 ND 12, ¶ 13, 604

N.W.2d 453. We have not specifically addressed whether a voluntary partial payment or satisfaction of a judgment for damages constitutes a waiver of the right to appeal. Courts in other jurisdictions have reached divergent results depending on the particular facts and circumstances of the case. *See, e.g.*, E.H. Schopler, Annotation, *Defeated party's payment or satisfaction of, or other compliance with, civil judgment as barring his right to appeal*, 39 A.L.R.2d 153, § 12 (1955); 4 C.J.S. *Appeal and Error* § 280 (2007). We need not resolve the issue here because cases addressing the question generally involve situations where the partially satisfied portion of the judgment remains disputed in the appeal. In this case, the partial payment relates to wages, penalties and interest Scott's represented to be an "undisputed" liability.

[¶ 7] The district court found Scott's "acknowledged throughout the course of the proceedings that wages were due the wage claimants, however, as of the date of trial such wages remained unpaid." After entry of judgment, Scott's paid what it claimed to be the "undisputed" amount of wages, penalties and interest. Scott's request on appeal for reversal and entry of a "take-nothing" judgment violates the well-established principle that "arguments not raised before the district court cannot be raised for the first time on appeal." *Morris v. Moller*, 2012 ND 74, ¶ 8, 815 N.W.2d 266.

[¶ 8] Scott's cannot on appeal dispute its "undisputed" liability. Therefore, Scott's did not waive the right to appeal from the judgment by partially satisfying the judgment. However, Scott's only may challenge the judgment in excess of the "undisputed" amount that has been satisfied.

## III

[¶ 9] Scott's contends the claimants failed to establish any of the elements necessary to recover unpaid wages under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), the Portal–to–Portal Act, 29 U.S.C. § 254(a), and applicable federal and state rules and regulations.

[¶ 10] North Dakota's labor laws require employers to pay certain employees a specified minimum wage and overtime for hours worked. *See* N.D.C.C. § 34–06–03; N.D. Admin. Code §§ 46–02–07–02 and 46–03–01–01. Scott's agrees North Dakota's labor laws on disputes over unpaid wages generally parallel the provisions of the FLSA. Section 46–02–07–02(7), N.D. Admin. Code, addresses compensability for employee travel time:

"7.  Ordinary travel from home to work need not be counted as work time. Special and unusual one-day assignments performed for the employer's benefit and at the employer's request is work time for the employee regardless of driver or passenger status. Travel away from home is work time when performed during the employee's regular working hours. Time spent traveling on nonworking days during regular working hours is work time. The time spent as a passenger on an airplane, train, bus, or automobile after normal working hours is not work time. The driver of a vehicle is working at anytime when required to travel by the employer. Travel time from jobsite to jobsite, or from office to jobsite, is work time to be compensated. Activities which are merely incidental use of an employer-provided vehicle for commuting home to work are not considered part of the employee's

principal activity and therefore need not be counted as work time."

[¶ 11] The State agrees N.D. Admin. Code § 46–02–07–02(7) mirrors the provisions of federal law, with the exception of the sentence: "The driver of a vehicle is working at anytime when required to travel by the employer." However, there is no indication the district court relied on this sentence of N.D. Admin. Code § 46–02–07–02(7) in deciding the case. Rather, the court analyzed this case under principles of federal law.

[¶ 12] In *Bernal v. Trueblue, Inc.*, 730 F.Supp.2d 736, 745 (W.D.Mich.2010), the court set forth the applicable federal law:

"Generally, the Portal–to–Portal Act, 29 U.S.C. § 254(a), requires employers to pay employees only when they are engaged in 'principal activities of employment,' and not those activities that are considered 'preliminary or postliminary' to the principal activities. Travel time is generally not considered a principal activity of employment.... There are, however, certain exceptions to this rule. First, travel time may be a principal activity of employment if it is 'an indispensable part of performing one's job' rather than 'ordinary home to work travel which is a normal incident of employment.' ... Second, even if the travel itself is not an indispensable part of performing one's job, travel time is compensable if it 'occur[s] after the employee commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday.' ... This is known as the 'continuous workday' rule."

(Internal citations omitted.)

[¶ 13] Federal and state law impose strict recordkeeping requirements upon employers. The FLSA's records provision states in relevant part:

"Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder."

29 U.S.C. § 211(c). Section 34–06–02(2), N.D.C.C., also requires that employers maintain for examination and inspection "all books, payrolls, and other records of any employer of employees appertaining to or bearing on the questions of hours or conditions of labor of any employee employed by such employer."

[¶ 14] "To establish an FLSA claim for unpaid overtime, the employee must (1) prove 'that he has in fact performed work for which he was improperly compensated' and (2) 'produce[ ] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Brennan v. Qwest Commc'ns Int'l, Inc.*, 727 F.Supp.2d 751, 761 (D.Minn. 2010) (citation omitted).

"Thus, in situations where the employer's records cannot be trusted and the employee lacks documentation, the Supreme Court held 'that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.' ... The burden then becomes the employer's, and it must bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence.... 'If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.'"

*Allen v. Board of Pub. Educ.*, 495 F.3d 1306, 1316 (11th Cir.2007) (internal citations omitted).

[¶ 15] "Whether an activity is excluded from hours worked under the FLSA, as amended by the Portal–to–Portal Act, is a mixed question of law and fact. The nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law." *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir.2004). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made." *Nodak Mut. Ins. Co. v. Bahr–Renner*, 2014 ND 39, ¶ 7, 842 N.W.2d 912. "Whether a finding of fact meets a legal standard is a question of law, and questions of law are fully reviewable on appeal." *State v. Mittleider*, 2011 ND 242, ¶ 13, 809 N.W.2d 303.

### A

[¶ 16] Scott's argues the district court erred in holding the employees' travel time was compensable because their activities during the commutes were merely "incidental" to the use of the company trucks and because Scott's had no constructive knowledge of any unpaid time claimed by the employees which was not documented on their time sheets. The essential question here is whether the claimants' travel time between the home base and the various jobsites was a compensable principal activity or a noncom-

pensable preliminary or postliminary activity of employment.

"Activities performed either before or after the regular work shift, on or off the production line, are not preliminary or postliminary activities if they are integral and indispensable parts of the principal activities for which covered workers are employed and are not specifically excluded by statute. The 'integral and indispensable' standard, which is used to determine whether time outside the regular work day is compensable under the Fair Labor Standards Act (FLSA) and the Portal–to–Portal Act, requires that an activity be both necessary and essential to completeness or organically joined or linked to a principal activity of employment.

"Any activity that is integral and indispensable to principal activity is itself a principal activity and thus compensable under the FLSA. Such activities are principal activities outside the exemption of the Portal–to–Portal Act and therefore are compensable. Thus, where activities of employees before and after working hours constitute an integral part of their principal duties, they are entitled to recover compensation therefor without meeting the requirements of the Portal–to–Portal Act that a special contract for compensation for these periods or a custom or practice of paying such compensation exists. Because it is difficult to fix a definite standard for determining what activities of an employee performed before and after his or her hours of work are an integral part of, and indispensable to, the employee's principal activities, each case must be decided on its peculiar facts."

51B C.J.S. *Labor Relations* § 1358 (2010) (footnotes omitted); *see generally* W.J. Dunn, Annotation, *Portal–to–Portal Act,* 21 A.L.R.2d 1327 (1952). "While in the main the factors which must be considered are well known, the difficulty as always comes when we undertake to apply them to a given state of facts, and because facts differ decided cases are not controlling and are helpful only as they point the way." *Mitchell v. Greinetz,* 235 F.2d 621, 623 (10th Cir.1956).

[¶ 17] "Courts have held that travel may be considered an indispensable activity of employment if the employees are required to transport equipment that is essential to the performance of the job." *Bernal,* 730 F.Supp.2d at 746. Federal "Department of Labor regulations indicate that requiring employees to carry equipment that is significantly heavier than that which an ordinary commuter carries transforms commuting time into compensable work." *Clarke v. City of New York,* No. 06 Civ. 11397 (GEL), 2008 WL 3398474, at *5 (S.D.N.Y. June 16, 2008) (footnote omitted); *see also* 29 C.F.R. § 790.7(d); *Crenshaw v. Quarles Drilling Corp.,* 798 F.2d 1345, 1350 (10th Cir.1986), *disapproved on other grounds by McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988); *Secretary of Labor v. E.R. Field, Inc.,* 495 F.2d 749, 751 (1st Cir.1974); *D A & S Oil Well Servicing, Inc. v. Mitchell,* 262 F.2d 552, 555 (10th Cir.1958); *Wirtz v. Gilbert,* 267 F.Supp. 69, 72 (D.R.I.1967).

[¶ 18] Scott's contends its trucks merely provided a convenience so employees could "carpool" to work sites if they wished to do so. However, the record contains photographs of utility vehicles owned by Scott's equipped with overhead racks and toolboxes and also equipped to pull trailers carrying back hoes, lifts, trenchers and Bobcat loaders. The vehicles, including extended-cab, crew cab, and regular cab pickups, have a large carrying capacity. The claimants testified that the vehicles transported tools, equipment and

materials to jobsites on a daily basis and that they would not have been able to perform their jobs without the items carried on the vehicles. The claimants testified about the variety and volume of tools, equipment and materials transported in the vehicles, including their own tools as well as company tools, ladders, conduit and pipe, drills, saws, wire, outlets and switches. The claimants also testified about loading and unloading essential equipment at the shop in Wahpeton and servicing the company-owned vehicles at the beginning and end of work days.

[¶ 19] In addition, Scott's work policies imposed strict conditions on the use of company vehicles. A vehicle assignment chart was posted each day designating the driver of each vehicle and listing crew members assigned to each vehicle. The policies required that company vehicles be used for company business only, and that they "be driven to and from jobs during working hours." The policies also mandated that employees were responsible for the care of company vehicles and required that the vehicles be serviced and fueled at night and cleaned at the end of each day. Although Scott's argues any unrecorded time loading, unloading or engaging in these latter activities was de minimis, this contention ignores the weight of the evidence.

[¶ 20] Scott's argues the district court erred because it is a well-established principle that to be found liable an employer must have had constructive knowledge that it was not compensating employees for time worked. See White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 873–77 (6th Cir.2012), and cases collected therein. Although Scott's contends it had no constructive knowledge because the employees failed to document their claimed unpaid wages on their time sheets, this argument ignores evidence that the claimants' attempts to record the full amount of travel time on their timecards would be routinely rejected by Scott's. Boumont testified that "we were told not to. I tried and your timecard would be put back in your slot, your mail slot, with maybe a little note on it. If you want to get paid for this redo it."

[¶ 21] The district court found:

"5. The wage claimants met their burden of proof that the company-owned vehicles were necessary to transport tools, equipment, and supplies to and from the jobsites that were essential for the performance of their jobs on nearly a daily basis and that the quantity of such items, whether by collective volume or by individual size and weight, was sufficiently burdensome to justify compensation for their transportation."

[¶ 22] "In a bench trial, the district court determines credibility issues and we do not second-guess those credibility determinations." Four Season's Healthcare Ctr., Inc. v. Linderkamp, 2013 ND 159, ¶ 16, 837 N.W.2d 147. The court's findings are not clearly erroneous and the court did not misapply those facts to the controlling law.

B

[¶ 23] Scott's argues the claimants did not produce sufficient evidence to show as a matter of just and reasonable inference that they worked the amount of unpaid hours awarded. This issue is a question of fact subject to the clearly erroneous standard of review. See Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31–32 (2nd Cir.2002), overruled on other grounds, Slayton v. American Express Co., 460 F.3d 215 (2nd Cir.2006); Hearnsberger v. Gillespie, 435 F.2d 926, 933 (8th Cir.1970).

[¶ 24] In determining the amount of wages due, a court may consider evi-

dence of an investigator's estimates based on employees' interview statements, the employment records and the employees' testimony at trial. *See United States Dep't of Labor v. Cole Enters., Inc.,* 62 F.3d 775, 781 (6th Cir.1995). The claimants testified that because their attempts to record travel time on the front of their timecards would be rejected by Scott's, they recorded travel time on the back of the timecards as vehicle usage when they drove company vehicles. Scott's acknowledged this method was an accurate representation of the time each claimant spent driving a company-owned vehicle. The Department's compliance investigator explained her methodology for review of more than 2,800 of the claimants' timecards and her worksheets summarizing and calculating their compensable travel time. The compliance investigator based her review and calculation of compensable travel time by using the vehicle usage recorded on the back of the timecards for a wage claimant as a driver. The compliance investigator also relied on worksheets provided by Scott's identifying work weeks and what Scott's believed was still owed to the claimants. Scott's did not produce any vehicle logs identifying the vehicle drivers. Using this method, the compliance investigator prepared wage claim determinations for each of the claimants.

[¶ 25] Scott's argues the unpaid hours awarded to the claimants "is based on a wholly unreliable estimate of the amount of work performed." Scott's points to some alleged discrepancies or inconsistencies in the Department's calculations. However, the damages awarded to an employee need only be an "approximat[ion]." *Allen,* 495 F.3d at 1316. On this voluminous record, a few inconsistencies do not render an approximation of hours worked clearly erroneous. *See Doty v. Elias,* 733 F.2d 720, 725 (10th Cir.1984) (admitted approximations of hours worked were not clearly erroneous despite evidence that some of plaintiffs' figures were exaggerations).

[¶ 26] The district court found:

"6. The wage claimants also met their burden of proof that such compensable travel time was recorded in the form of equipment usage as the driver of the vehicle on the back side of their timecards as acknowledged by the defendant to be a reliable indicator of whether a wage claimant drove a vehicle on any particular day.

"7. The defendant failed to meet its burden to negate the reasonableness of the inferences to be drawn from the wage claimants' evidence through the production of business records or otherwise, that would provide the Court a rational basis to deny or limit the extent of the travel time for which the wage claimants seek compensation.

"8. The calculations regarding the wage claimants' uncompensated wages and statutory penalties/liquidated damages as set forth in the Department's wage claim determinations are adopted and incorporated as the basis for the Court's Order for Judgment, with interest as provided by law."

[¶ 27] Scott's failed to convince us that the Department's methodology for calculating compensable hours was flawed or that the district court's findings on the amount of unpaid wages are clearly erroneous.

IV

[¶ 28] We do not address other arguments raised because they either are unnecessary to the decision or are without merit. We affirm the judgment.

[¶ 29]   GERALD W. VANDE WALLE, C.J., RONALD E. GOODMAN, S.J., JOHN C. McCLINTOCK, JR., D.J., and DALE V. SANDSTROM, J., concur.

[¶ 30]   The Honorable JOHN C. McCLINTOCK, JR., D.J., and the Honorable RONALD E. GOODMAN, S.J., sitting in place of KAPSNER, J., and McEVERS, J., disqualified.